## Prather, et al. v. Watson's Executor, et al.

(Decided April 23, 1920.)

### Appeal from Owen Circuit Court.

1. Wills—Construction—Intention of Testator.—The first rule in the construction of wills, and the one which surrenders to no other, is to ascertain the intention of the testator from the language he employed in the entire will, and give it such construction as will carry out that intention.

2. Wills—Intention of Testator—Per Capita Distribution.—Where the subject of a testamentary disposition is directed to be "equally divided," or to be divided "share and share alike" or where similar words are used which indicate an equal division between or among two or more persons, a per capita distribution will be made of the property, unless a contrary intention is discoverable from the language used in the will.

3. Wills—Construction—Intention of Testator.—A testator directed his farm of four hundred acres to be sold "and the proceeds to be divided equally between E. C. Watson and Sheffie Bridges, and my two grandchildren, Sheffie Watson and Shafter Watson, Walter's heirs." E. C. Watson and Sheffie Bridges were children of the testator, and another son, Walter, was dead at the time of the execution of the will, leaving the two other named devisees as his only children. Held, that a contrary intention from the first rule stated above was "discoverable from the will," and that the two grandchildren took jointly one-third of the property as representatives of their deceased father.

4. Wills—Use of Word "Heirs."—It will be presumed, in the absence of a contrary intention appearing, that a testator used the words "heirs" or "heirs of the body" in their primary, legal or technical sense.

5. Wills—Construction—Intention of Testator.—Ordinarily a subsequent devise or legacy in the same will or in a codicil will be deemed to be cumulative and in addition to the first one, but since the question is one of intention on the part of the testator, if his language be such as to indicate that the subsequent one is to substitute in whole or in part the first one, the will will be given such construction; and where a testator devised certain bank stock to his grandson at a fixed price, which was much less than its real value, and directed that the investment so made remain for a fixed period: Held, that the devise of the bank stock was intended by the testator to substitute in part a prior devise made to the same person, and that the grandson should account for and be charged with the fixed price of the stock in the distribution made under the will.

JOHN W. DOUGLAS and H. W. ALEXANDER for appellants.

B. M. LEE and J. G. VALLANDINGHAM for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit was filed to obtain a construction of the will of P. Watson, who died a resident of Owen county. The clauses of the will involved are the third, the sixth and seventh, and they are in this language:

"3rd. I want my land, containing about 400 acres, sold and the proceeds to be divided equally between E. C. Watson and Sheffie Bridges and my two grandchildren, Sheffie Watson and Shafter Watson, Walter's heirs. Now I have let E. C. Watson have three thousand dollars. I hold his note for same. Said notes is to be equally divided, same as the above land.

"6th. I want Shafter Watson to have my bank stock consisting of sixteen shares in the Corinth Deposit Bank,

at fifty dollars a share, and ten shares in the First National Bank at Owenton, at one hundred dollars per share. I want said bank stock to stay the way it is until Shafter Watson is twenty-one years of age, the dividend to go to help clothe and school said Shafter.

"7th. I want all personal property and household and kitchen furniture sold and the proceeds divided equally between E. C. Watson and Sheffie Bridges and my two grandchildren, Sheffie Watson and Shafter Watson."

Other clauses of the will, as well as codicils added thereto, provide for specific devises which are not involved in this contest.

It is contended by plaintiffs and appellees, E. C. Watson, individually, and as executor of the will, and Sheffie Bridges, the only surviving children of the testator, that he intended by clauses three and seven of his will to divide the property therein mentioned into three equal parts, giving to each of them one-third, and to the defendants and appellants, Sheffie Watson and Shafter Watson, the only children of a deceased son of the testator, jointly, the other one-third. Defendants deny that contention and say that they share the property mentioned in the two clauses of the will *per capita* with plaintiffs.

In regard to clause six of the will defendants contend that Shafter Watson was given the bank stock therein mentioned at the valuation of $1,800.00 as a cumulative gift, and in addition to what was devised to him by other clauses of the will; while plaintiffs insist that the value fixed on the bank stock in clause six was a *pro tanto* substitutional gift to Shafter Watson with which he should be charged on the payment of other legacies devised to him. The court below sustained the contention of plaintiffs with reference to each of the clauses involved, and adjudged that the proceeds of the farm mentioned in clause three, and those of the sale of personal property mentioned in clause seven, should be divided into three equal parts and distributed, one to E. C. Watson, one to Sheffie Bridges, and one to the two defendants, the testator's grandchildren, and further adjudged that Shafter Watson, in the distribution made to him, be charged with $1,800.00, the value fixed on the bank stock in clause six of the will. Complaining of that judgment, defendants prosecute this appeal.

Taking up first the propriety of the judgment as it relates to clauses three and seven, it may be said that there is no rule more firmly fixed in the law, and more universally followed by the courts than the one that in the construction of wills the polar star which guides the courts is to ascertain the intention of the testator from the language he employed; and in following this rule the courts are not confined to the particular language of the clause being construed, but may look to the language of the entire will, and if the intention of the testator can be gathered therefrom, it is the bounden duty of the court to apply that intention, provided it does not contravene any established rule of law. Appleton v. Appleton, 185 Ky. 391; Shields' Exor. v. Shields, Idem 249; Radford v. Fidelity & Columbia Trust Co., Idem. 453; Hughes v. Cleveland Jewish Orphanage Asylum, Idem. 461; Sauer v. Taylor's Exor., Idem. 609; Greenwell v. Whitehead, Idem. 74; Phelps v. Stoner's Admr., Idem. 466, and White v. White, 150 Ky. 283. The intention meant by this rule is the one that the testator expressed by the language he employed in his will, and does not refer to an entertained or verbally expressed intention not inserted in the will. Shields' Exor. v. Shields, *supra;* Wickersham v. Wickersham, 174 Ky. 604; Fowler v. Mercer's Exor., 170 Ky. 353, and Eichorn v. Morat, 175 Ky. 80. When, however, the language employed by the testator is obscure, and of doubtful meaning, the courts have the right, and it is their duty, to place themselves by extrinsic testimony in the place of the testator at the time he made the will by showing the circumstances and conditions with which he was surrounded, and to determine from these the sense and meaning which he intended to convey by the language employed.

It is likewise a rule well settled in the law pertaining to wills that "Where the subject of a testamentary disposition is directed to be 'equally divided,' or to be divided 'share and share alike,' or where similar words are used which indicate an equal division between or among two or more persons, the persons between or among whom the division is to be made take *per capita,* 'unless a contrary intention is discoverable from the will.' " 40 Cyc. 1490.

This court has uniformly recognized and applied the foregoing rule, with its qualifications, as will appear from the cases of Lachland's Heirs v. Downing's Exor.,

11 B. Mon. 32; Bledsoe's Admr. v. Bowman's Admr., 3 Ky. Opinions, 677; Wells v. Newton, 4 Bush 158; Brown's Exor. v. Brown's Devisees, 6 Bush 648; Purnell v. Culbertson, 12 Bush 369; McFatridge, &c. v. Holtzclaw, 94 Ky. 352; Bethel v. Major, &c., 24 Ky. Law Rep. 398; Hughes v. Hughes, 118 Ky. 751; Kaufman v. Anderson, 104 S. W. (Ky.) 340; Armstrong v. Crutchfield's Exor., 150 Ky. 641, and Justice v. Stringer, 160 Ky. 354.

It is conceded by both sides that the above authorities authorize a *per capita* division of the property whensoever it is directed to be divided "equally between" the devisees who share it, or where other similar expressions are used, such as "share and share alike," "unless a contrary intention is discoverable from the will." In the Lachland, McFatridge and Bethel cases, *supra,* it was held that the language employed by the testator indicated an intention that the devisees should take *per stirpes* instead of *per capita* which, as we have seen, is contrary to the general rule. While in the other cases cited from this court it was held that there was nothing in the will indicating a contrary intention. It will therefore readily be seen that each case must depend upon the peculiar language employed, and if there is nothing to indicate a contrary intention on the part of the testator, a division of the property *per capita* will be directed. But if such contrary intention does appear, the distribution will be made *per stirpes.*

In this connection it might also be well to remember that unless there are plain expressions to the contrary, it will be presumed that a testator intended equal division of his property amongst those sustaining the same degree of relationship to him, not preferring those of a remote degree over those sustaining a nearer relationship. Cyc., *supra,* 1493, 1494.

It is also a rule applied in the construction of wills, as will be seen from the text in Cyc., *supra,* 1459, that "the word 'heirs' in a will primarily is used in its legal or technical sense and, unless the context shows a contrary intention, must be construed as meaning all those, who, in case of intestacy, would be entitled by law to inherit on the death of the testator or ancestor named." Again, in the same volume, 1492, it is stated in the text that:

"As a general rule where a devise or bequest is made to 'heirs,' 'heirs at law,' or 'legal heirs,' the law pre-

sumes the intention of the testator to be that the beneficiaries so designated shall take *per stirpes* and not *per capita.*" But this rule, as is true of the others named, will not prevail in the face of a contrary expressed intention in the will."

The inquiry, then, is—what did the testator in this case mean by the language which he employed in the third clause of his will "divided equally between E. C. Watson *and* Sheffie Bridges *and* my *two* grandchildren, Sheffie Watson and Shafter Watson, Walter's heirs," and the same language found in clause seven of the will with the words "Walter's heirs" omitted?" In the light of the foregoing rules for the construction of wills, we are convinced that it is more than reasonably certain that he intended that his *two* grandchildren, Sheffie Watson and Shafter Watson, should receive the portion of the property devised by those two clauses which their father, Walter Watson, would have taken as an heir of testator; i. e., that he constituted them one group who took substitutionally, as the representatives of their father, the portion which he would have inherited from the testator had there been no will. The will first names E. C. Watson as the taker of one division of the property, "and Sheffie Bridges" as the taker of another division, and in naming those who should constitute the third group in the division he says "and my *two* grandchildren," naming them, and then adds, "Walter's heirs." Evidently he intended to include in the last group or class among which his property should be divided his grandchildren collectively, which is evidenced by the words, "my two grandchildren" as composing that group or class. This construction is fortified by the additional words, "Walter's heirs," indicating that the testator intended his two grandchildren to represent, in sharing the devise, their father, Walter. This view is further strengthened by the rule, *supra,* that in using the word "heir" in his will the testator intended it to have its ordinary and usual meaning. There is nothing in the will to indicate a contrary intention. Viewed in this light, it is evident that the testator intended for his two grandchildren to take under the will what they would have inherited from their father had he been the devisee and died intestate.

There is nothing in the cases relied on by appellants militating against this construction. In many of them

the language of the will plainly indicated a *per capita* distribution, and in the others there was nothing to indicate a *per stirpes* distribution, and following the general rule, *supra,* the court held that the division should be made *per capita.* That it was the intention of the testator of the will now under consideration to devise to his two grandchildren, jointly, only one-third of the property described in clauses three and seven of his will as the heirs or representatives of his deceased son, Walter, is perfectly clear from the language he employed, and the court did not err in so holding.

This brings us to a consideration of clause six of the will. There is a branch of the law of wills, which is sometimes referred to by the courts in construing them, known as "Cumulative and Substitutional Legacies." It is thus stated in Page on Wills, section 798:

"If testator, by will, or by will and codicil or codicils, makes two or more gifts to the same person or persons, the question arises whether the second gift is intended by the testator to be in addition to the first, or as a substitute for the first. If the second legacy is intended by the testator to be given in addition to the first legacy, the second is commonly spoken of as a cumulative legacy. If the second legacy is intended by testator to be given in the place of the first, it is commonly spoken of as a 'substitutional legacy.' "

The same principle is stated in Alexander on Wills, volume 2, page 1010, sec. 682, and in the following section (683), on the same page, the author says:

"Whether legacies are cumulative, the second being in addition to the first, or whether they are substitutional, the latter being substituted for or taking the place of the prior, is a matter of construction to determine the intention of the testator."

Of course there is no room for construction where the intent is plainly expressed, or where language is employed plainly indicating the testator's intention. It is only when there is a degree of vagueness that construction, from a review of the entire will, is necessary It is admitted, as well as proven, in this case, that the sixteen shares in the Corinth Deposit Bank, mentioned in the sixth clause of the will, had a book value of $120.00 per share, when the par value was only $50.00 per share; and that the par value of the ten shares in the First Na-

tional Bank at Owenton, also mentioned therein, was $100.00 per share, when the book value was much more than that. If the testator had intended the legacy of all those shares which he gave to his grandson, Shafter Watson, should be a cumulative one, or one in addition to his other legacies in the will and codicils (including those contained in clauses three and seven) there would have been no necessity for fixing the value of the stock mentioned in the sixth clause, and the words therein "at fifty dollars a share," and "at one hundred dollars per share," would not only be superfluous, but meaningless.

A testator is presumed to have a purpose in the use of each expression he makes in his will, and words and phrases may not be discarded when construing a will unless it is plainly obvious that no meaning was intended to be attached to them. In this case it is by no means obvious that the testator aimlessly used the expressions "at fifty dollars a share" and "at one hundred dollars per share." On the contrary, it is perfectly clear that he wanted his grandson to have the investment which he had made in those stocks, and which he required to remain so "until Shafter Watson is twenty-one years of age, the dividend to go to help clothe and school said Shafter." He no doubt contemplated that the investment as thus made was perhaps better than any guardian for Shafter Watson could or would make of any property which he might receive under the will. So he provided for the continued investment of a part of Shafter's portion under his will equal to the par value of the stock devised, but he did not want his grandson to have his portion under the will reduced by any greater sum. In this view, the devise of the stock at par value was evidently intended to be a *pro tanto* substitutional one. This is the only conclusion which can be reasonably arrived at, in the light of the language employed, without discarding expressions to which the testator evidently attached some meaning.

Our conclusion is that the judgment appealed from was proper, and it is affirmed.