## Fischer, Admr., et al. v. Lange, et al.

(Decided March 4, 1921.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. Wills—Per Capita Distribution.—Where the subject of a testamentary disposition is directed to be "equally divided," or to be divided "share and share alike," or where similar words are used which indicate an equal division between or among two or more persons, a per capita distribution will be made of the property, unless a contrary intention is discoverable from the language used in the will.

2. Wills—Construction.—A testator in devising the remainder of his property after making specific devises said: "I give, devise and bequeath in equal shares to my said daughter, E. A. F., and the two children of my deceased daughter, E. L. and N. L., . . . to them, their heirs and assigns forever." There was no word or expression in that clause nor in any other part of the will indicating the character of division which should be made of the property therein mentioned among the devisees mentioned. Held, that under the rule first stated above a per capita division should be ordered of the property.

3. Wills—Funeral Expenses of Life Tenant.—None of the corpus of an estate may be applied to the payment of funeral expenses or debts of the life tenant of the property, who was also executrix of the will under which she held it, and an administrator de bonis

non of the testator, after the life tenant's death, can not receive credit for the amount of such debts which he paid after the death of the life tenant.

4. Costs—Question of Allowance Upon Appeal.—Questions of allowances of cost in equity cases are to be governed largely by the facts of each case and to be apportioned by the trial court in the exercise of a sound discretion, which will not be disturbed on appeal unless it has been abused.

5. Descent and Distribution—Attorneys' Fees.—Where the attorneys for the devisees who brought a suit to settle and divide the estate succeeded in charging the administrator with a substantial sum it is proper to allow plaintiffs a reasonable attorney's fee to be paid out of the funds of the estate.

6. Executors and Admintrators—Costs of Settlement of Estate.—An administrator will not be charged on final settlement of his estate for uncollected rents of the property of his decedent where he has acted with reasonable diligence and business prudence in the management of the particular character of property in his charge.

JOHN E. SHEPARD for appellants.

FRED W. SCHMITZ for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming on the original and on the cross appeal.

On the 10th day of March, 1896, Francis J. Rottinghaus died testate a resident of Kenton county. His will, thereafter probated in the Kenton circuit court, directed the payment of his debts and then gave to his wife, Gesina Adelheid Rottinghaus, the remainder of his property, both personal and real, for her use during her natural life. After her death he devised his residence in Covington to his daughter, Elizabeth Anna Fischer, the wife of appellant, and defendant below, Fred A. Fischer. The fourth paragraph of his will is in these words:

"All the rest and residue of my estate so remaining after the death of my said wife, I give, devise and bequeath in equal shares to my said daughter, Elizabeth Anna Fischer, and the two children of my deceased daughter, Elmer Lange and Norbert Lange, to have and to hold, to them, their heirs and assigns forever, excepting, however, that the sum of two hundred dollars shall be paid to Fred Lange, my son-in-law, before the division of said remaining estate shall take place."

The fifth paragraph appointed testator's wife executrix of his will "without any bond or inventory of my estate to be required of her by the Kenton county court,"

and directed that at the death of his wife his son-in-law (defendant Fred A. Fischer) qualify as executor *de bonis non* and without bond. Upon probate of the will the widow qualified as executrix but she executed no bond, nor were there any appraisers of the estate appointed nor any motion made therefor. The executrix took charge of the property left by the testator and continued to discharge her duties as such until her death in 1906, when defendant, pursuant to the request made in the will, was appointed administrator *de bonis non* of the estate of testator and took charge of the property left by him and continued thereafter to discharge the duties of that position.

On November 24, 1917, this suit was filed in the Kenton circuit court by the grandchildren of testator (who are two of the devisees mentioned in the fourth paragraph of the will) Elmer H. Lange and Norbert Lange, who are the children of a deceased daughter, against the defendant Fred A. Fischer and his wife, Elizabeth Anna Fischer, seeking a settlement of the estate and the payment to them of their share of it under the will. Much evidence was taken and there were some three or more references to the master commissioner, who reported the condition of the defendant's accounts as administrator with the will annexed, to which reports various exceptions were filed, and upon final submission the court rendered judgment charging the administrator with $4,151.98 as being the balance in his hands for distribution, and adjudged that he had overpaid his wife the defendant, Elizabeth A. Fischer, the sum of $1,323.72. It was further adjudged that there was a balance of $2,075.99 due each of the plaintiffs and defendant was ordered to pay to each of them that sum less their part of the costs, and Mrs. Fischer was ordered to pay to the administrator the amount which she had been overpaid, the costs being divided between the parties. From that judgment defendants, Fischer and wife, prosecute this appeal and plaintiffs moved for and obtained in this court a cross appeal.

The administrator makes a number of complaints against the judgment on his appeal, among which are that he was not credited with a note of $1,000.00, which he borrowed in his fiduciary capacity from a bank directly after his appointment, and the interest paid thereon; that he was improperly charged with interest on accrued balances in his hands; that the judgment improperly allowed an attorney's fee of $500.00 to plaintiffs' attorney;

that he was not credited with the legacy of $200.00 to Fred Lange, mentioned in paragraph four of the will; that he was not credited with the funeral expenses of Mrs. Rottinghaus, and the expense incurred in looking after and taking care of the lot upon which testator and his wife were buried; that he was not credited with $418.08 due to John H. Fischer Sons, a company in which the appellant was the principal member and in which he was most chiefly interested; and finally, that the court improperly construed paragraph four of the will in directing a per capita distribution of the property therein mentioned between the two plaintiffs and Mrs. Fischer instead of a division *per stirpes,* i. e., one-half to Mrs. Fischer and one-half to the two plaintiffs.

On the cross appeal the judgment is criticized because it failed to charge the administrator with $1,453.25, the amount of rents which he failed to collect from tenants occupying the two pieces of real estate owned by testator (one in Cincinnati, O., and the other in Covington, Ky.), other than his residence; that the court erroneously allowed the sum of $500.00 jointly to the administrator and his attorney and failed to charge the administrator with the entire cost of this litigation.

The testator at the time of his death owned three pieces of real estate, two located in Covington, one of which was his residence, and another located in Cincinnati, Ohio. This property, outside of his residence, was in a very much dilapidated and run down condition. The Covington property rented for only ten dollars per month, when a tenant could be procured, and the most that the Cincinnati property ever rented for was thirty-five dollars per month. At the time of the testator's death he owned 104 shares of stock in a Cincinnati street railway company, of the par value of $100.00 per share, but worth only $50.00 per share. After Mrs. Rottinghaus qualified as executrix she obtained six other shares of that stock which was issued to the estate which she represented. During her administration of the estate she made no settlements whatever, nor is there anything in the record to show what other property than that mentioned went into her hands. The only matter of record pertaining to the ten years of her service is an affidavit which she filed in the county court and in which she stated that she had paid all of the debts of her decedent. Whether the testator had any money in bank or any notes or accounts due

him it is impossible to determine. The same is true as to whether Mrs. Rottinghaus had any separate estate of her own, either before her husband's death, or while she acted as executrix, or whether she left any at the time of her death. She kept no account of any collections or payments as executrix of her husband's will and if she had any private property she failed to keep any account of it or any payments made with it. The same neglectful course seems to have been pursued by defendant, Fred A. Fischer, after his appointment as administrator. The only data from which he was able to make anything like an intelligent statement of his accounts were checks and check stubs which he, and which his firm, through which he made some of the collections and payments, had preserved.

Under these circumstances and conditions we do not think the court erred in adjudging the six shares of street railway stock, acquired after the testator's death as a part of his estate. Payment by appellant of the funeral expenses of the widow and the account of John H. Fischer Sons and the expense in taking care of the cemetery lot, and some other items which Mrs. Rottinghaus verbally directed her son-in-law to pay for mass celebrations, as we gather from the record, were paid out of the proceeds of the $1,000.00 note above mentioned, and we have examined the record in vain to find any legal ground upon which the appellant is entitled to credit therefor. They were debts either owed by, or for the exclusive benefit of Mrs. Rottinghaus, who, as we have seen, left no property in her name and, she being only a life tenant, such claims could not be a legal charge against the remaindermen or against the estate of which she was the personal representative. It is insisted, however, that plaintiffs are estopped to contest these items since, as claimed, they by their silence and acquiescence consented for the plaintiff to pay them. We find no evidence in the record supporting this alleged estoppel. The plaintiffs were infants at the time, of comparatively tender years, and even if they could be estopped by such conduct, as is relied on, there is nothing to show that any of the payments involved were made with any knowledge on their part and there is no foundation for this contention.

The record shows appellant to be mistaken in his contention that he was not allowed credit for the $200.00 devise to Fred Lange, and likewise mistaken when he says that the judgment charged him with compound interest

on the balances in his hands after the first two years of his administration. We have examined the record closely and find no merit in either of these complaints. Neither did the court err, under the facts and circumstances of this case, in allowing plaintiffs a reasonable attorney's fee. The administrator in his report after the suit was filed claimed that the estate was due him the sum of $735.-00, whereas, as we have seen, he was charged in the judgment with $4,151.98. Thus it will appear that plaintiffs by this suit augmented the assets of the estate, above what appellee admitted, nearly $5,000.00, and we think the fees allowed their attorneys were proper and the amount reasonable.

This brings us to the chief point in the case, which is the construction of paragraph four of the will. The appellant, in support of his contention that a *per stirpes* division should be made thereunder, relies on the cases of Lachland Heirs v. Downing's Extrs., 11 B. Mon. 32; Bethel v. Major, 24 Ky. L. R. 398; Armstrong v. Crutchfield, 150 Ky. 643; White v. White, 168 Ky. 753, and cases referred to therein; while plaintiffs in support of an opposite contention, in favor of a per capita division rely upon the cases of Purnell v. Culbertson, 12 Bush 369; Kaufman v. Anderson, 31 Ky. L. R. 888; Justice v. Stringer, 160 Ky. 365; McFatridge v. Holzclaw, 94 Ky. 352; Hughes v. Hughes, 118 Ky. 756; Potts v. Shirley, 28 Ky. L. R. 872; and the Armstrong, and the White cases relied on by appellant. In the recent case of Prather v. Watson, 187 Ky. 709, the same question was presented as is involved on this appeal. In that opinion the cases relied on by both appellants and appellees, together with many others, are referred to and discussed. The rule was there laid down in accordance with the settled doctrine for the construction of wills that: "Where the subject of a testamentary disposition is directed to be 'equally divided,' or to be divided 'share and share alike,' or where similar words are used which indicate an equal division between or among two or more persons, the persons between or among whom the division is to be made take per capita, 'unless a contrary intention is discoverable from the will.'" 40 Cyc. 1490. It was further therein held that where such words were used by the testator, and there was nothing within the will indicating a contrary intention, it would be presumed that the testator meant a per capita division, which would be ordered "unless a con-

trary intention is discoverable from the will." The language of the paragraph of the will there involved was: "I want my land, containing about 400 acres, sold and the proceeds to be divided equally between E. C. Watson and Sheffie Bridges and my two grandchildren, Sheffie Watson and Shaftor Watson, Walter's heirs. Now I have let E. C. Watson have three thousand dollars. I hold his note for same. Said notes is to be equally divided, same as above land." It was held that the testator meant therein to direct a *per stirpes* division. This conclusion was bottomed almost entirely upon the use of the words "Walter's heirs" in that paragraph of the will, and that this fact, with the additional one of conjoining the three devisees or classes with the conjunction "and," indicated an intention on the part of the testator to divide his property among three classes; one to his son, E. C. Watson; another to his daughter, Sheffie Bridges, and another to the two named children of his deceased son, Walter, whom he designated as "Walter's heirs;" showing that he intended them to take in a representative capacity, as heirs of his deceased son, and that their combined share should be limited to whatever Walter would get had he been living. We have in the instant case no such indicative expressions as contained in the will under consideration in the Prather case. Nor is there any expression in any other part of the will of Mr. Rottinghaus indicating in the slightest degree a purpose to divide his property in any other way than according to the well settled rule, *supra,* where the language of the will comes within the terms of that rule. The testator in the instant case, in the fourth paragraph of his will, bequeathed his property "in equal shares" to his daughter, naming her, and to his two grandchildren, naming them, and stating that they were the children of his deceased daughter. If there could possibly be framed a case coming strictly within the general rule for the interpretation of wills, where this question is involved, this to our minds, is one of them. There is no expression, either in that clause or in other parts of the will, indicating a contrary intention, and the court correctly held that a division per capita should be made. We deem it unnecessary to further elaborate the question or to discuss the cases dealing therewith, since this was done in the recent Prather case and no good purpose could be accomplished by repeating it here.

On the questions raised by the cross appeal we deem it necessary to say but little. The principal item involved in it is that of $1,453.25, rents which appellant failed to collect. As before stated the property rented was very much dilapidated and situated in such localities as not to be inviting to a lucrative business, even if the property had been in condition in which to conduct such a business. Necessarily a class of tenants who were engaged in an unstapled business were the only ones who could be induced to occupy the property and we find nothing in the record showing such dereliction on the part of appellant as would authorize the court to charge him with this item or any part of it. Neither do we think the court erred in allowing appellant compensation for his services, or in allowing him the very moderate attorney's fee which the court fixed. Questions of this character, as well as the one concerning cost, are largely within the sound discretion of the court, to be exercised under the peculiar facts of each case, and its discretion will not be disturbed on appeal unless flagrantly abused. We do not find such abuse in this case and have reached the conclusion that the judgment should be affirmed on both the original and cross appeal, which is accordingly done.