## Graves et al. v. Jasper et al.

(Decided March 11, 1930.)

C. E. RANKIN for appellants.

W. H. PHILLIPS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Affirming.

Frank Yankee, a colored man, with no descendants, died a resident of Mercer county in March, 1928. A short time before his death he executed his will, in which he provided for the payment of his debts and funeral expenses, and then said in clause 3 thereof: "After all legal and just debts are paid, I will and bequeath to Mary Graves my step daughter-in-law all what is left both real and personal to be her own and (do) as she wishes with during her life time. Should there be anything left at her death I want it to go to my people if they can be found. My sister Bettie Jasper when last heard from lived in Richmond, Virginia. My other sisters and Bro: live in Meshake Ferry Powhattan Co. Virginia. My father Stephen Jasper, Mother Emily Jasper, Bro. Charles Jasper sisters Bettie Jasper and Carline Jasper all live in Meshake Ferry Post office, Va."

The testator owed debts amounting to $106.67 more than his net personalty, and he owned when he died two small parcels of real estate in or near Harrodsburg in Mercer county, only one of which had any improvements upon it, and they were very old and dilapidated, and to such extent as that they were practically uninhabitable, and from neither of which could any substantial income be realized. The devisee in the residuary clause inserted above, Mary Graves, brought this declaratory judgment proceeding against the known and unknown collateral heirs of the testator, for the purpose of construing his will and fixing and determining her rights thereunder as devisee in its residuary clause. She alleged that she was very old and feeble and unable to work; that practically no income could be realized from the property, and it was entirely inadequate to defray her necessary living expenses, and that, according to her interpretation, she took under the will a fee-simple title to the property, which she sought to have so adjudged; but, if wrong in that contention, then she contended that she took the property with power of sale and with the right to encroach upon the corpus of the proceeds, if necessary, for her comfortable maintenance, and for which she sought a judgment if it should be determined that she was in error as to her first contention.

It was further alleged in the petition that it would be necessary to pay the balance of the testator's debts, and that $106.67 be devoted thereto out of the proceeds of the sale, and that she be adjudged the balance to expend as she pleased in maintaining herself the remainder of her life. Upon submission, the court, among other things, adjudged: "That by the terms of the will of Frank Yankee, his estate, including the real estate, described in the petition, vested in the plaintiff, Mary Graves, for her life, with full power to sell, convey and reinvest the same, and with like power of sale, conveyance and re-investment of any property wherein the fund is re-invested and no purchaser from her shall be required to see to the reinvestment of any proceeds of sale."

The balance of testator's indebtedness was ordered paid out of the proceeds as well as the costs in this proceeding, including allowed attorney's fees, and that the plaintiff was entitled to use so much of the net proceeds "as is necessary for her reasonable support and main-

tenance including expenses incident for illness; and also so much thereof as is necessary to pay any debts already incurred for those purposes.'' From so much of that judgment as denied her the fee-simple title in the real estate she prayed and prosecuted this appeal; and from so much of the judgment as adjudged to plaintiff the right to encroach upon the corpus of the net proceeds for her necessary maintenance the collateral heirs of the testator contest by cross-appeal obtained in this court.

It will therefore be seen that there is not any appeal from that part of the judgment directing the balance of the testator's indebtedness to be paid out of the proceeds of the sale of the real estate, nor is there any appeal from that part of the judgment permitting plaintiff in person to make the sale, but only from so much as adjudged her any interest or right in and to the corpus of the proceeds, if necessary, for her proper mainte-nance, but her right to be the sole judge of such necessity and the right to appropriate such corpus to that purpose without supervisory direction from the court is ques-tioned on the cross-appeal. We will dispose of the ques-tions involved during the progress of the opinion.

That plaintiff took only a life estate we think there can be no question. Her dominion over the devised prop-erty, whatever its nature and extent, was expressly limited in the will to ''during her life time.'' It is the rarest case indeed if it is ever true, that, when such posi-tive and unambiguous language is employed, the estate of the devisee continues longer than his or her life. Domestic cases construing wills containing similar lan-guage are Clore v. Clore, 184 Ky. 83, 211 S. W. 208, 209; Prather v. Watson, 187 Ky. 709, 220 S. W. 532; Wright v. Singleton, 190 Ky. 657, 228 S. W. 38, 39; Beemon v. Utz, 217 Ky. 158, 289 S. W. 221; Sisson v. Sisson, 208 Ky. 843, 272 S. W. 15, and a great number of others which it is unnecessary to catalogue, but some of which are cited in the opinion rendered in the cases named. A casual reading of them will reveal that in some instances the life tenant is given express power of sale and conveyance; while in others an implied power of sale and encroach-ment on the corpus was adjudged to be given by the will or deed under consideration. In some of them also the life tenant was adjudged to be restricted to only the income of the devised property, while in others it was held that from the language of the whole will it was the

intention and purpose of the testator to permit his life devisee to encroach upon the corpus of the property, if necessary for the purposes of the devise, i e., the comfortable maintenance of the life tenant during his life.

The divergencies of the opinions in the respects indicated are due to the fact of different phraseology in each of the involved instruments, for as said in the opinion in the Clore case, supra; ''But as it is rare, if ever, that two wills worded exactly alike may be found, it is extremely difficult to find any authority that may be said to be exactly in point.'' In other words, the guiding rule in the interpretation of wills and other written documents is the ascertainment of the intention of those who executed them and to then carry out that intention, and which is to be obtained from the entire language employed in the instrument to be construed. From the fact, therefore, that no such instruments are couched in identical language, the interpretation of each must be governed by its own phraseology in the light of the above controlling rule.

The measuring language in the Clore case was: ''To use and enjoy during their natural lives, with remainder, if any,'' etc. It was held in the original opinion that the words ''remainder if any'' ''plainly shows that they (life tenants) should have the right to consume so much of the principal estate as might be necessary for their comfortable support and maintenance,'' and that the remainder interest attached only to the remnant of the estate after such support had been furnished. However, it was held in the response to the petition for rehearing in that case that the life tenants were not to be the judges of the amount of the corpus of the estate that they should consume in supplying their necessities of maintenance and support.

The language involved in this case directed to the measuring of plaintiff's interest is ''to do as she wishes with during her life time,'' and then whatever is left, or the remnant, should go as therein directed. The controlling language of the will in the Clore case and that in the will in this case are in all respects substantially the same. The Clore opinion, in so far as it adjudged the right of the life tenant to encroach upon the corpus, was approved in the cases of Garriott v. Garriott, 208 Ky. 94, 270 S. W. 484; Kincaid v. Bell, 205 Ky. 497, 266 S. W. 44, 45; and, in so far as it was adjudged in the response to

the petition for rehearing therein that application to the court should be made before the encroachment could be had, was cited with approval in the case of Louisville Baptist Orphans' Home v. Igleheart, 223 Ky. 702, 4 S. W. (2d) 693, and the same doctrine was adopted and applied in the case of Fidelity & Columbia Trust Co. v. Harkleroad, 224 Ky. 5, 5 S. W. (2d) 477.

The purpose to be accomplished by the required application to the court is to protect the contingent interest of the remainderman, as measured by the creating language of the instrument, when that language is such as to divest the life tenant of the discretionary power of sale and appropriation of the proceeds, without advice or control from any source whatever. If such language vests the life tenant with such discretion and authority, then the remainder interest is that much more burdened and lessened and with no right of objection by the remainderman. But, where no such unlimited discretion is given to the life tenant, then the remainderman has the right to invoke the aid of the court to protect his remainder interest from dissipation and unauthorized waste and destruction of it by the life tenant. And so the response to the petition for rehearing in the Clore opinion so held, and which was approved in the cases of Kincaid v. Bell, supra, and also in the later Igleheart case, as well as in the Sisson case. The rule under such circumstance was thus stated in the Bell opinion: "However, where power to sell is not expressly given to a life tenant, and no discretion is vested in him to determine when a sale is necessary for his use and enjoyment, we have held that an implied disposition and use of the corpus for the life tenant cannot be exercised, except when the necessity exists, and that the life tenant may not judge of such necessity, but to enforce such provisions it is essential for him to invoke the aid of a court of equity for that purpose."

We do not construe the will in the instant case as giving the plaintiff express or implied power of sale at her own discretion and, in addition, to give her the discretionary right to appropriate the proceeds to any other purpose except her living necessities, and the cases supra last referred to held that in such circumstances the proper court, in the protection of the interest and rights of the remainderman, should upon proper application direct the encroachments that should be made upon the corpus for

the purpose indicated. There being no such unlimited discretion given to the life tenant by the will here involved, as was also true in the cases last referred to, we think the judgment should be modified so as to permit plaintiff and appellant to encroach upon the proceeds of the sale (which when made will be the corpus of the estate) only upon application to the court, and, as said in the Clore opinion, the case may remain upon the docket, or, if stricken, may be placed upon the docket for the making of such order as plaintiff may request.

Wherefore the judgment is affirmed on the appeal and reversed on the cross-appeal, and for proceedings consistent with this opinion. All costs in this and the court below should be paid out of the estate.

### Dissenting Opinion by Judge Clay.

The testator devised the property to Mary Graves "to be her own and do with as she wishes during her life time," and devised only what was left to others. He did not say to do with as the court or any one else wishes, but to do with as she wishes; this making her the sole judge of what she should do with the property. I therefore dissent from so much of the opinion as holds that she may not encroach on the corpus without a judgment of court.