## Slattery et al. v. Ryan et al.

(Decided March 28, 1930.)

ROBT. C. TALBOTT and WM. GRANNAN for appellants.

JAMES BRADLEY and BRADLEY & BRADLEY for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Dennis Hanley died in 1907, testate. The eleventh and twelfth clauses of his will read:

"11th. After the payment of the bequests, above mentioned, after the death of my sister, Han-

orah Hanley, if my brother James Hanley survives my said sister Hanorah Hanley, I give to him one-fourth of the remainder of my estate and one-fourth of my said estate to the children of my deceased brother Patrick Hanley, to be divided in equal shares among them and to the children of my deceased sister, Mary Slattery, one-fourth of my said estate to be divided equally among them, and to the children of my deceased brother, John Hanley, one-fourth of my said estate to be divided equally among them.

"12th. In the event that my brother, James Hanley, should die before the death of my said sister, Hanorah Hanley, then I give all of my said estate after the death of my said sister, Hanorah Hanley, and after the payment of the bequests hereinbefore set out, to my nephews and nieces, to-wit: the children of James Hanley, Patrick Hanley, Mary Slattery, and John Hanley, to be divided in equal shares among said nephews and nieces."

James Hanley, the brother of the testator, died in 1908 and Hanorah Hanley, the sister of the testator and the life tenant under the eleventh clause of the will, died in 1928. On her death, the question arose whether the division of the estate covered by the eleventh and twelfth clauses of the will among the remaindermen should be per stirpes or per capita. This estate was real estate. In this suit to settle the estate of Dennis Hanley the chancellor held that the division should be per stirpes and, from that judgment, the remaindermen with the exception of the family of John Hanley which was satisfied with the judgment, have appealed.

In the case of Dennis v. Shirley, 212 Ky. 114, 278 S. W. 591, we had before us this matter of construing a will to ascertain whether a per capita or a per stirpes division was intended, and after considering many previously decided cases bearing on the point, we said:

"In solving the question, the first thing to be determined is the intention of the testator as gathered from the language of his entire will bearing upon the question for solution, since that intention is the only one that the courts are authorized to enforce. In determining whether he intended a per capita or a per stirpes distribution, certain rules have been established which are discussed, considered, and applied in a great number of cases from

this court, the three latest of which are Prather v. Watson, 187 Ky. 709, 220 S. W. 532; Fischer v. Lange, 190 Ky. 699, 228 S. W. 684, and Rogers v. Burress, 199 Ky. 766, 251 S. W. 980 . . . In the opinion in the Rogers case, it is said: 'We have held in an unbroken line of cases that unless a contrary intention should be discoverable from the will, a provision for a division "equally" or "share and share alike" between or among two or more persons or groups, means a per capita and not a per stirpes distribution.' "

That the quoted excerpt from the Dennis case is the applicable rule of law with which to determine the present controversy is conceded by the parties to this litigation. They agree that the expressions used in the will of Dennis Hanley that the property covered by the eleventh and twelfth clauses of the will should be divided "equally" and "on equal shares" among the beneficiaries, would, unless a contrary intention should be discoverable from the will, require a per capita and not a per stirpes distribution. They differ as to whether "a contrary intention is discoverable from the will." Only the eleventh and twelfth clauses of this will shed any light on this problem. Again it is agreed that had James Hanley survived his sister Hanorah Hanley, the division as prescribed by the eleventh clause of the will, being the applicable clause under the assumed state of fact, would have been per stirpes. But as James Hanley died before his sister Hanorah, thereby making the twelfth clause of the will the applicable one, the appellants insist that the division should be per capita as no contrary intention can be discovered from the language of that clause. But in order to determine the intention of the testator, his will must be read as a whole. Walker v. Irvine's Ex'r, 225 Ky. 699, 9 S. W. (2d) 1020; Jones v. Jones' Ex'rs, 198 Ky. 756, 250 S. W. 92; State Bank of Eau Gallie v. Rose's Adm'r 219 Ky. 562, 293 S. W. 1087. It will be noted that by the eleventh clause of the will the one-fourth of the estate devised to James Hanley was to go to him only in the event he survived his sister, Hanorah Hanley. Had the testator closed his will with this eleventh clause, under the facts of this case as future events determined them, this one-fourth of the estate of Dennis Hanley thus devised by the eleventh clause of the will would have been undevised estate as there would have been no provision covering it if James Hanley died

before his sister, Hanorah Hanley, as he did. Therefore, it is clear that the testator added the twelfth clause to his will to provide for that contingency, and that the primary purpose of the twelfth clause was to dispose of this one-fourth of the testator's estate in the event James Hanley died before Hanorah Hanley.

In the eleventh clause of this will, the testator's language is too clear to require other than a per stirpes division. The children of his deceased brothers and sister are dealt with as classes. One-fourth of the estate is devised to each of these classes and the class is in each instance denominated "the children of my deceased" brother or sister as the case may be. In the twelfth clause of the will, we still have the remainderman designated as "the children of" the named brother or sister, and but for the last phrase in this twelfth clause "to be divided in equal shares among said nephews and nieces," it would be plain, reading the eleventh and twelfth clauses together, as we must, that the testator was still dealing with the children of his sister and brothers as classes. Thus, in the case of Gulley v. Lillard's Ex'r, 145 Ky. 746, 141 S. W. 58, 59, the testator by the second clause of his will provided:

" 'In order to do equal and exact justice to all my children, share and share alike, I direct that all my other children to. wit: Mrs. Sarah Helen Ripey, or her lawful heirs; the lawful heirs, the children of Mrs. Mary Wallace Miles, deceased; Mrs. Fannie M. Boswell or her lawful heirs; and Dr. Gustavus D. Lillard or his lawful heirs, each are to receive the sum of one thousand, thirty dollars ($1,030.11) and eleven cents, before my said son Christopher M. Lillard, Jr., participates in my estate; and then the residue of my estate both real and personal be divided equally among all my children or their lawful heirs.' In another clause dealing with prospective contestants of his will the testator declared as to the bequests which would be forfeited by such contestants, 'shall go to my other children if they be living, but if they be dead, then to their heirs, share and share alike.' "

The question presented was whether the division should be per capita or per stirpes. We said:

"It is manifest that the testator meant to deal with classes rather than individuals, when consider-

ing the offsprings of his children. No grandchild is named, whilst each child is. Instead of naming grandchildren (though a number were then living), he invariably deals with them in groups; each child's offsprings to represent a group, and to stand in the place of the deceased child who otherwise would have been his devisee. The circuit court so adjudged. We concur.''

In the case of Prather v. Watson's Ex'r, 187 Ky. 709, 220 S. W. 532, the question presented was whether there was to be a per stirpes division or a per capita division under the following clauses of the testator's will:

"Third. I want my land, containing about 400 acres, sold and the proceeds to be divided equally between E. C. Watson and Sheffie Bridges and my two grandchildren, Sheffie Watson and Shafter Watson, Walter's heirs. Now I have let E. C. Watson have three thousand dollars. I hold his note for same. Said notes is to be equally divided, same as the above land. . . .

"Seventh. I want all personal property and household and kitchen furniture sold and the proceeds divided equally between E. C. Watson and Sheffie Bridges and my two grandchildren, Sheffie Watson and Shafter Watson.''

We held that the seventh clause of the will would have to be read in connection with the third clause and, when that was done, a per stirpes division was manifested. In reaching that conclusion we said:

"It is conceded by both sides that the above authorities authorize a per capita division of the property whensoever it is directed to be divided 'equally between' the devisees who share it, or where other similar expressions are used, such as 'share and share alike,' 'unless a contrary intention is discoverable from the will.' In the Lachland (11 B. Mon. 32), McFatridge (94 Ky. 352, 22 S. W. 439, 15 Ky. Law Rep. 312) and Bethel (68 S. W. 631, 24 Ky. Law Rep. 398) cases, supra, it was held that the language employed by the testator indicated an intention that the devisees should take per stirpes instead of per capita, which, as we have seen, is contrary to the general rule, while in the other cases cited from this court it was held that there was nothing in the will indicating a contrary intention.

It will therefore readily be seen that each case must depend upon the peculiar language employed, and if there is nothing to indicate a contrary intention on the part of the testator, a division of the property per capita will be directed. But if such contrary intention does appear, the distribution will be made per stirpes. . . . The inquiry, then, is, what did the testator in this case mean by the language which he employed in the third clause of his will, 'divided equally between E. C. Watson and Sheffie Bridges and my two grandchildren, Sheffie Watson and Shafter Watson, Walter's heirs,' and the same language found in clause 7 of the will with the words 'Walter's heirs' omitted? In the light of the foregoing rules for the construction of wills, we are convinced that it is more than reasonably certain that he intended that his two grandchildren, Sheffie Watson and Shafter Watson, should receive the portion of the property devised by those two clauses which their father, Walter Watson, would have taken as an heir of testator; i, e., that he constituted them one group who took substitutionally, as the representatives of their father, the portion which he would have inherited from the testator had there been no will. The will first names E. C. Watson as the taker of one division of the property, 'and Sheffie Bridges' as the taker of another division, and in naming those who should constitute the third group in the division he says 'and my two grandchildren,' naming them, and then adds, 'Walter's heirs.' Evidently he intended to include in the last group or class among which his property should be divided his grandchildren collectively, which is evidenced by the words 'my two grandchildren,' as composing that group or class. This construction is fortified by the additional words 'Walter's heirs,' indicating that the testator intended his two grandchildren to represent, in sharing the devise, their father, Walter. This view is further strengthened by the rule, supra, that in using the word 'heir' in his will the testator intended it to have its ordinary and usual meaning. There is nothing in the will to indicate a contrary intention. Viewed in this light, it is evident that the testator intended for his two grandchildren to take under the will what they would have inherited from their father had he been the devisee and died intestate.''

It is therefore manifest that had the testator omitted from the twelfth clause of his will the phrase "to be divided in equal shares among said nephews and nieces," that it would be perfectly clear that he intended a per stirpes and not a per capita division. Did the addition of this phrase indicate that he had abandoned the carefully thought out and expressed plan of the eleventh clause of his will, to the effect that the children of his brothers and sister were to take as groups rather than as individuals? It must be conceded that the answer is not clear from doubt. But when it is remembered that the primary purpose of the twelfth clause of the will was to provide for the disposition of the one-fourth of the estate devised to James Hanley, in the event he died before Hanorah Hanley, and that, if the contention of the appellants for a per capita division be upheld, a division will take place among the beneficiaries very different from that if a per stirpes division be decreed, and no reason can be discovered from the will for such a change on the part of the testator's intention caused solely by the death of James Hanley before that of his sister, and that, taking the eleventh and twelfth clauses of the will together, we find that the intention as manifested by the language is on the whole to treat the beneficiaries as groups, that is, as children of the deceased brother or sister as the case may be, it seems clear to us that the added phrase in the twelfth clause of the will was not meant to disturb the provision the testator had made but only to emphasize that each group was to be on a parity with the other groups, and that it did not serve to change the per stirpes division so clearly indicated by the rest of these two clauses of the will into a per capita division. In the Prather case supra, which, in this respect, is very like the present case, we held, as we have seen, that the mere expression of an equal division among named beneficiaries did not overcome a manifest intent to deal with these beneficiaries as groups and not as individuals. The same conclusion was reached in the case of Fields v. Fields, 93 Ky. 619, 20 S. W. 1042, 14 Ky. Law Rep. 865. The clause of the will there involved read:

"I hereby direct my executor to sell my undivided interest in said two tracts of land, . . . and pay the proceeds of such sale equally to the children (that are alive at the time of distribution) of my brother William Fields, of Missouri, and the living

children of my brother James Fields. In the event of the death of any of the parties to this bequest, then their portion is to go to any issue they may have left; and, if none is left, then their portion is to be given to the heir or heirs indicated above.''

In upholding a per stirpes division, we said:

''The presence of some suggestive clause or expression in other portions of the will, indicatory of the testator's intent to the contrary, must be found, before we should disturb the equal distribution of the estate per capita among these children, as is aparently provided for, by a literal construction of the language used; and we observe, first, that the sixth clause appears to furnish us some slight clew to the testator's meaning. He directs his executor to collect all money owing to him, by note or otherwise, to sell his bank stock, pay the few debts he owed, and 'distribute the residue as follows, to wit: One-fourth of the amount he, my executor, will pay to my sister, Jemima Fields; one-fourth to my brother Fredrick R. Fields (provided he is living at the time of distribution, if not, his share is to be equally paid to the other three branches of my kindred named in this item 6th;) one-fourth is to be paid to the children of my brother William Fields, dec'd; and the remaining fourth to be paid to the children of my brother James Fields, dec'd.' Thus the testator gives his estate to his sister, Jemima, as one branch of his kindred; to his brother Frederick, if living, and, if dead, then 'equally' to the other three branches; to the children of his brother William Fields, deceased, whom he designates in this sixth clause as one of the branches of his kindred; and to the children of his brother James Fields, deceased, whom he also designates as one of said branches. He refers to the children of his brother William collectively only, and as a branch or as a class, and he does this in apparently studied or express terms; and having so unequivocally used these phrases as representing branches of his kindred, and having disposed of a large portion of his estate to these children, as branches, in the sixth clause of his will, no good reason can be assigned for giving a different meaning to the same phraseology when used in the fifth clause. Moreover, the fifth clause is, itself, not wholly without suggestive

indication of intention. The testator knew that his brother James had two children only, and therefore he provides that, in the event of the death of any of the parties to the bequest, their portion was to go to their issue, and if none, then to the heir or heirs, as above indicated. When we regard the distribution as being made to the two branches or classes, we can see why the testator used the word 'heir' in providing that the surviving brother or sister of the children of James Fields should take the property, and be properly designated as an 'heir.' And then, too, under a distribution per capita, upon a child dying without issue, its property would go, not to its brother or sister, wholly, as members of the same class or branch, but the distribution is made equally among the remaining brothers and sisters and the cousins of the decedent. If one of James Fields' children died, the remaining one would take one seventh of the property, and the cousins take six-sevenths,—a distribution certainly not contemplated by the testator.''

We have carefully read the cases cited by the appellants. None of them militate against the conclusions here reached. They all lay down the general proposition of the Shirley case, supra, and with which we began our discussion of the questions presented on this appeal. The real dispute presented in them all is whether from the language of the particular will under examination an intention of the testator to provide for a per stirpes rather than a per capita division could be discovered. We are convinced from our study of the will of Dennis Hanley taken as a whole, that he intended a per stirpes and not a per capita division and, as the chancellor so held, his judgment will be, and it is, affirmed.