## Wagner et al. v. Wagner et al.

October 22, 1946.

Bradley & Blanton, David D. Cline and William T. Baldwin for plaintiffs.

Raymond Connell for defendants.

Opinion of the Court by Judge Siler—Affirming.

This was an equitable action seeking an adjudication as to (A) what instrument should be determined to be the last will of J. A. Wagner, deceased, and as to (B) what is the proper construction of that same will after its determination.

Both sides are appealing from the adjudication of the chancellor and this court has been called upon to review his judgment in its entirety in order to determine whether or not it is correct and free from error.

J. A. Wagner, an uneducated but financially successful man, died on September 5, 1943, leaving an estate consisting of government bonds, promissory notes, cash, real estate, insurance and other property in the total amount of about $78,000. He was survived by two sons, Edward T. Wagner, appellant, and Harry A. Wagner, Sr., appellee. He was also survived by some of his own collateral kindred. Appellant Edward T. Wagner has one son, John A. Wagner II, and appellee Harry A. Wagner, Sr., has two sons, Harry A. Wagner, Jr., and Glen Phillips Wagner.

J. A. Wagner left two instruments, both written in his own handwriting, one dated February 24, 1940, and the other dated July 27, 1943. They were found together and in the same place after Wagner's death.

Sometime after February 24, 1940, Wagner disposed of a ''farm on the Cynthiana Road'' which he had previously devised to appellant Edward T. Wagner by the instrument dated February 24, 1940.

On April 26, 1943, Wagner made two deeds of trust to a Paris bank, one for the benefit of appellant Edward T. Wagner and the latter's son in the principal sum of $15,000 and the other for the benefit of appellee Harry A. Wagner, Sr., and his sons in the principal sum of $15,000.

These deeds of trust were not in controversy but they were no doubt of some value to the chancellor in determining and construing the testator's will.

The two testamentary documents, which are the specific subjects of this litigation, are now copied below:

## The 1940 Instrument

"Feb. 24/1940

"As soon after my Death as possible I Want E. T. Wagner to have my farm on the Cynthiana Road at Coopers Run he May have All the crops he Wishes to Raise on Same but the farm will Not be Responsible for any lien Mortgage or Atchment for any debts Which May incured other then the Government Taxes to hold his Natural life Should he die Without lawful heirs then it Shall go to Harry Alvin Wagner Jr and Glenn Philipp Wagner Share & Share alike to be put in Gov Bonds and they May Spend the int only Harry Alvin Wagner Jr and Glen Philipps Shall have out of My Savings to Make them Equilivent to the price of the farm Which is 36000 Thirty Six Thousand dollars Then the Rest of the Estate Shall Be devided Equally be tween E. T. Wagner and Then it Shall be put in government Bonds and they May Spend the int only Should Harry Alvin Wagner Jr die without lawful heirs then his part Shal be turned over to Glen Philipps Wagner or Should Glen Philipps die with lawful heirs then his part shall be turned over to Harry Alvin Wagner Jr Should both die with lawful heirs then it Shall go to My Brothers and Sisters Children Harry Alvin Wagner Sr is to have my home place all his natural life at his death then it is Equaly devided be tween Harry Alvin Wagner Jr and Glen Philipps Wagner to be put in Government Bonds and to Spend the int only.

"This my last will in 1940

"J. A. Wagner"

## The 1943 Instrument

"Paris, Kentucky, Tuesday July 27, 1943.

"Should anything happen to me I want my Government Bonds divided between Edward T. Wagner and Harry Alvin Wagner Jr and Glen Phillips Wagner and put in trust Just like the other is filed So they May Spend the Int only Should they all die Without Heirs then it comes back to my estate to be given to my Brothers & Sister Heirs or descendence and the notes that I hild I direct that $500.00 Five Hundred dollars be put in the Endoment fund of the Jacksonville Cemetary for them to use the Int for the upkeep of the cemetary and

500.00 Hundred dollars to be given to the Mt. Carmel Church for the Manetancince of Same that is the Int Should the Church sease to have religious services then it Shall be returned to my estate and be devided as above Mentioned and 500.00 to go to the Blanket Creek Baptist Church to be as the Mt. Carmel Church as mentioned above And the remainder is to be devided between E. T. & Harry Alvin & Glen Phillips Harry Alvin Sr is to get $20.00 per month as long as he lives out of Harry Alvins and Glen Phillips estate I want F. C. Rose to get 500.00 five hundred dollars out of the property as it is Sold Smith Reese will take care of my body my grave and tent is paid for My life policy will take care of all my debts and the moneys in the bank will be applied as above

"Written and signed by J. A. Wagner"

It is unnecessary to set out the full particulars of the chancellor's judgment. It is sufficient, we believe, to say that the chancellor adjudged that the 1943 instrument was the will of J. A. Wagner and that it revoked the 1940 instrument; that the chancellor further adjudged that the distribution of the testator's government bonds among Edward T. Wagner, Harry A. Wagner, Jr., and Glen Phillips Wagner should be on an equal basis and that the distribution of the ultimate residue of the estate should also be on the same basis among these same distributees. In these particulars just mentioned and in other particulars of the chancellor's judgment we have been unable to find any error prejudicial to what we would consider as a reasonable determination of the testator's will or its interpretation.

The chancellor's first problem was to determine just what instrument or instruments constituted the testator's last will. Before him was the 1943 instrument, which was more than 3 years closer to its author's mind than the 1940 instrument. It is true that the 1943 instrument did not specifically revoke the 1940 instrument and that the two instruments were found side by side after death had closed their author's eyes. Yet a close study of the two instruments leads to the conclusion that the 1943 instrument may well be considered a complete instrument within itself; that the 1940 instrument was inconsistent with conditions as they existed in 1943 since

the very first item mentioned in the 1940 instrument, viz., the "farm on the Cynthiana Road," had been sold by the testator prior to 1943.

One of the will revocation methods provided by statutory enactment is that of a "subsequent will or codicil." See KRS 394.080. When J. A. Wagner wrote the 1943 instrument, he made, we believe, a ";subsequent will" within the contemplation of the revocation statute. It has been said that a will revocation may be accomplished by the concurrence of the testator's intent and some overt act on his part. The question of the intention to revoke and of the act done to effect it is one for the chancellor's decision. See 28 R. C. L. 168. Implied revocation of a will is a deduction of law from the established facts of each particular case. See Sneed v. Ewing, 5 J. J. Marshall 460, 22 Am. Dec. 41.

Under all these circumstances, the chancellor appears to have been warranted in adjudging that the 1943 instrument had the effect of revoking the 1940 instrument and that the 1943 instrument itself constituted the will of J. A. Wagner. The intention of revocation and the overt act of accomplishment may reasonably be considered to have concurred through the different acts of J. A. Wagner both in 1943 and in the interim between 1940 and 1943.

The principal other problem of this litigation was the determination of whether the will's words, "I want my Government Bonds divided between Edward T. Wagner and Harry Alvin Wagner Jr and Glen Phillips Wagner" and also its words, "the remainder is to be devided between E. T. & Harry Alvin & Glen Phillips," were words of per capita distribution or per stirpes distribution. If these words connoted an intention of per capita distribution, that is by the head or individual, then Edward T., Harry A., Jr., and Glen Phillips Wagner would each receive a one-third interest in the bonds and in the estate's residue. But if these words connoted an intention of per stirpes distribution, that is by the stock or class, then Edward T., the testator's son, would receive a half interest in the bonds and in the estate's residue, while Harry A., Jr., and Glen Phillips, the two sons of the testator's other son, Harry A., Sr., would jointly receive the remaining half of the same

property. The chancellor adjudged, and rightly so we think, that the words in question were words of per capita, not per stirpes, distribution.

This court has declared that where the subject of a testamentary disposition is directed to be "equally divided", or to be divided "share and share alike" or where similar words are used which indicate an equal division between or among two or more persons, a per capita distribution will be made of the property, unless a contrary intention is discoverable from the language used in the will. Prather v. Watson's Ex'r, 187 Ky. 709, 220 S. W. 532; Rogers v. Burress, 199 Ky. 766, 769, 251 S. W. 980.

In this will the testator named three persons, not all equal in blood kinship to the testator and yet all so closely related to him as to make them of probable equal consideration in the testator's mind. It is a well known fact that many grandparents think as much of their grandchildren as they do of their own children. No word or phrase or deductible thought of this will produces any idea other than that of an equality among the three persons named. Nothing in the will is contrary to the equality idea, that is the per capita distribution plan, of the will. If the testator's initial expression about wanting his government bonds "put in trust just like the other is filed" has any significance whatever, its significance is, we believe, in relation to a plan of the estate's conservation, not in relation to its percentage of distribution. The chancellor's judgment followed the general plan of conservation set up in the testator's previously executed trust deeds, but it did not adopt their percentages of distribution. This interpretation of the will seems to be reasonable and proper. Accordingly, we believe that the chancellor correctly adjudged that the testator intended to make an equal percentage of distribution, that is a per capita distribution of the property in question among appellant Edward T. Wagner, appellee Harry A. Wagner, Jr., and appellee Glen Phillips Wagner.

Having found no error, the judgment of the lower court is now hereby affirmed in its entirety.