## Norton v. Moren.

## Caldwell, et al. v. Caperton, et al.

(Decided December 19, 1924.)

Appeals from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Wills—Bequest of Income with Remainder to Issue Held to Vest Absolute Estate in Remainder in Such Issue.—Bequest of income of trust fund to nephews and nieces named, with remainder on death of any one to widow and issue of such one, and provision that upon death of last of nephews and nieces trust property should be equally divided between the then surviving children of said nephews or nieces, held to vest an absolute estate in remainder in such income in issue surviving one of named legatees whose death preceded that of testatrix, and such remainder on death of one of such children passed to his widow.

2. Wills—Codicil Not Construed as Revoking Will to Extent More than Absolutely Necessary.—Though intent of testator is test when determining how far revocation is effected by codicil, the disposition of the will will be disturbed no further than is absolutely necessary to give effect to codicil.

3. Wills—Codicil Expressly Altering Will in One Respect Construed as Not Intending to Alter it in Other Respect.—A codicil will not operate as revocation of previous testamentary provisions beyond the clear import of its language, and express intention to change will in one particular impliedly negatives intention to alter it in any other respect.

4.  Wills—Devise Construed as Not Revoked in Case of Reasonable
    Doubt.—If there is only a reasonable doubt whether clause of re-
    vocation was intended to include particular devise, then such de-
    vise ought to stand.

5.  Wills—Codicil Revoking Bequest of Income to Life Tenant Held
    Not to Revoke Provisions as to his Children.—Where testatrix
    bequeathed income of trust to nephews and nieces named, with
    substitution of surviving widow and issue on death of any one, a
    codicil reciting, "I withdraw my bequest to (named nephew) in
    the body of this will but give him $1,000.00 as a token of affec-
    tion," held not to have revoked entire legacy, but on nephew's
    death his surviving children were entitled to share of income.

6.  Wills—Chancellor Not Required to Construe Will where Contro-
    versy or Need May. Never Arise.—Though chancellor may in
    proper cases at suit of parties in interest construe ambiguous
    clauses of will, where there is no actual present controversy, yet
    in absence of necessity therefor, chancellor cannot be required
    to pass on future rights that may never arise, declaratory judg-
    ment Act, section 6, not requiring such matters to be passed on.

HUMPHREY, CRAWFORD & MIDDLETON for appellant Cald-
well Norton.

A. J. CARROLL and H. E. McELWAIN, JR., for appellee Ferda Z.
Moren.

BARRET & NETTELROTH and FURLONG & WOODBURY for
appellees Hugh J. Caperton and others.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in
the case of Caldwell Norton v. Ferda Z. Moren and af-
firming in the case of James G. Caldwell, et al. v. Hugh
J. Caperton, et al., both on the original and cross ap-
peals.

These two appeals were prosecuted on separate rec-
ords, but as they involve the construction of, and other
questions relating to, the will of Sarah Julia Smith, they
will be considered in one opinion.

Mrs. Smith died, a resident of Louisville, on July 24,
1901. Her will, which was duly probated in the Jeffer-
son county court, is as follows:

"I, Sarah Julia Smith of Louisville, Ky.—

Do make this my last will, written by my own
hand.

First,—I give and bequeath to Cave Hill Ceme-
tery Investment Company the sum of Three Thou-
sand Dollars, to be used in caring for the lot of
James Guthrie and the graves thereon;

In order to make some provisions for my husband's only surviving sister, Lucy Smith, I give to her a home and lot on the south side of 1st and 2nd streets, Louisville, Ky., having a frontage of 23 feet by a depth of one hundred and twenty-three and one-half feet—I also give to her 43 shares of stock in Mutual Life Insurance Company of Kentucky—but from the dividends of this stock she must use it to help keep up the policy of Thomas Hall life insurance of Ten Thousand Dollars, which go in equal shares to his children at his death, as a gift from me.

I desire my trustees, hereinafter named, to pay from the income of my estate, the sum of One Thousand Dollars annually to Thomas Hall for the use of himself and Lucy Smith and such of his unmarried children that are making their home with him. Should Thomas Hall die leaving surviving him Lucy Smith, the sum of One Thousand shall be paid to her annually during her life.

I give to Lawrence Ringo a house and lot, which I purchased for his use in Carrollton, Carroll co., Ky.

I give to Lizzie Coke and her mother—Queenie Coke—a house and lot which I purchased for their use in Russellville, in which they now live.

I give to Julia Smith Caldwell the house and lot, in which I now live 1040 Second St., Louisville, Ky.

To James Guthrie Caldwell—my great-nephew —I leave five thousand dollars.

I also leave to my Great Nephew and his wife (Carrie and Guthrie Coke, Jr.) five thousand dollars.

After paying all my just debts and the *legacys* that I may leave in this will, or by codicils, I devise all my personal property such as Bonds, Stocks and Notes to be divided between my nieces and the wives of my nephews,

> J. Guthrie Coke, Sr.,
> John H. Caperton,
> James G. Caldwell,
> Junius Caldwell,
> Ann Eliza Norton,
> Augusta Bright,
> Mary P. Johnson.

After the payment of the foregoing items—I bequeath and devise unto my Executor and Trustee hereinafter named—in equal share my real estate of every description, with power to hold and manage—to make sale of the whole or any part as in his judgment may direct—and the purchaser shall receive a valid title and shall not be *compelled* to look to the application of the proceeds, to invest and reinvest the same which shall be held as other property, under this clause of my will.

The net income received from such trust is authorized from time to time to be divided equally between the following persons:

J. Guthrie Coke, Sr., John H. Caperton—James G. Caldwell—Junius Caldwell—Ann Eliza Norton—Augusta Bright and Mary P. Johnson.

At the death of any one of these named leaving a widow and issue, shall receive their share.

At the death of the last of these Nephews and Nieces the above named said property shall be equally divided between the then surviving children of said Nephew or Nieces.

This property is not to go to pay any debts of these persons named—but to go to their children as my legal heirs at law.

I desire no inventory or appraisement to be made of public record of anything that I may possess—either household furniture, pictures, silver, clothing, bonds or stock.

I hereby appoint John H. Caperton, as Executor and Trustee of this my will and request that no bond be required of him in any court in which my will may be probated or offered for probate.

In the event of said John H. Caperton should decline to qualify, or having qualified should by any reason cease to act as Executor and Trustee to this will, I appoint the Fidelity Trust & Safety Vault Co. of Louisville, Ky., as his successor and confer on said company all the powers that are confered on John H. Caperton in regard to this will—except that in the event of quality it shall be required to give security on its bond.

In Testimony whereof I have subscribed my name this day—August 10th, 1900.

(Signed) Sarah Julia Smith,
*nee* Sarah Julia Guthrie.

I want Mrs. Junius Caldwell *nee* Rochester to be *payed* Three Thousand Dollars at my death. Codicil 1st.

This codicil to my will of August 10th, 1900, to Lawrence Reynolds of Charleston, S. C.,—in charge of his sister, Mrs. C. M. McCord, for his use I leave One Thousand Dollars—to Julia Spalding of Galveston, Texas, I leave One Thousand Dollars—to Julia Miner of Jefferson Co., Ky.,—daughter of E. G. Miller—I leave One Thousand dollars—

to Mrs. I. W. Bowles—daughter of Mrs. Arch. Wilson—I leave Two Thousand Dollars—

(to Mary Miner and to Elixa Brooks One Thousand Dollars each)

to Miss Julia Pope Bowles I leave Two Thousand Dollars—

to Julia Mure of Bloomfield One Thousand Dollars—

to Mrs. Sally Houston of Spencer One Thousand Dollars—

to Mrs. Levi Wilson, Mrs. Mary Ann Karr and Sallie Rengo I leave Five Hundred Dollars each—

to Eugenie Poff, Mrs. Green Duncan, Mrs. Gerald O'Connor and Miss C. Hampton Hall, I leave Five Hundred Dollars each—

to Alex. Lilly and Thomas Cross, I leave Two Hundred Dollars each—

to my friend Mrs. Junius Rochester Caldwell I leave Two Thousand Dollars—

to my friend, Dr. T. T. Eaton, I leave One Thousand Dollars—

these gifts must be *payed* out of any money, stock or bonds that I may have at the time of my death.

Witness my hand—Sarah Julia Smith

*nee* Sarah Julia Guthrie.

This codicil written by my own hand May 4th, 1901. One Thousand Dollars I leave to the Baptist College at Georgetown, Ky.—for the Woman's department—this has been *payed*—also the thousand has been *payed* to the Seminary.—

to the Foreign Board of Missions of the Southern Baptist Convention located at Richmond, Va., I leave Five Thousand Dollars—to the Home Board of the Southern Baptist Convention located at Atlanta, Ga., I leave Five Thousand Dollars —

for the Board of General Association of Kentucky located at Louisville, I leave Five Thousand Dollars—

to Charles and Bell Spalding his wife I leave One Thousand Dollars each (One thousand each).

to the Ministers Aid Society I leave Five Hundred Dollars.

Witness my hand—SARAH JULIA SMITH.

nee Sarah Julia Guthrie.

May 4th 1901.

John Caperton has attended to all of my business for which he has been payed every month. I withdraw my bequest to him in the body of this will, but give him one thousand dollars as a token of affection—

My bequest to James Caldwell is for the benefit of his children free from any debts of his—

My bequest to Junius Caldwell is for the benefit of his children free from any debts of his—

My bequest to Augusta Bright is for benefit of her children—

My bequest to Mary C. Johnson is to return to my heirs at law unless she leaves living children—

All these bequests are to return to my heirs at law if their remain no heirs of the body to any one of my nephews and nieces at their death.

This codicil to my last will—

SARAH JULIA SMITH—nee Guthrie.

July 9th, 1901."

John H. Caperton qualified as executor and trustee under the will and brought suit against the parties in interest for a periodical settlement of his accounts as executor and trustee. Prior to the death of the testatrix, Ann Eliza Norton, one of her nieces, died, leaving two sons, Caldwell Norton, and Ernest J. Norton. Thereafter Ernest J. Norton died, leaving a will by which he devised his property to his widow, Ferda Z. Norton, who afterwards married Dr. John J. Moren. By appropriate pleading Mrs. Moren set up a claim to her husband's portion of the net income from the trust estate and her claim was sustained by the chancellor, and the propriety of this ruling is the only question presented by the appeal of Caldwell Norton.

It will be observed that after certain devises and bequests, not here material, the testatrix devised her real estate to her executor and trustee. It is conceded that the only provisions of the will having any bearing upon the question are as follows:

"1. The net income received from such trust is *authorised* from time to time to be divided equally between the following persons: J. Guthrie Coke, Sr.,—John. H. Caperton, James G. Caldwell, Junius Caldwell, Anne Eliza Norton, Augusta Bright and Mary P. Johnson.

"2. At the death of any one of these named leaving a widow and issue, shall receive their share.

"3. At the death of the last of these nephews and nieces the above named said property shall be equally divided between the then surviving children of said nephews, or nieces.

"4. This property is not to go to pay any debts of these persons named—but to go to their children as my legal heirs at law.

"5. All these bequests are to return to my heirs at law if there remain no heirs of the body to any one of my nephews and nieces at their death."

The first four clauses appear consecutively in the original will, while the fifth appears as the concluding paragraph of the third and last codicil to the will.

Appellant takes the position that Ernest J. Norton took only a life estate, or a defeasible fee, in the income, and that in either event he had nothing to devise to his widow. The argument is that having created a life estate in each of the persons named, and provided that if they should have any issue it should go to that issue with a provision for dividing the estate at a future time among the then surviving issue, it is most reasonable to believe that the testatrix intended to give only a life estate to such of the issue as should survive the period of distribution.

It will be observed that the testatrix provided for the distribution of the income from her real estate during the continuance of the trust and that the trust was to continue until the death of the last of her nephews and nieces. Clauses numbered 1 and 2 deal solely with the income. Whether the nieces and nephews take a life estate or a defeasible fee is wholly immaterial, since the

share of each nephew goes to his widow and heirs, if any, and the share of each niece to her heirs. In these clauses there is no limitation over of the estate devised to the issue of the nieces and nephews, nor other provision qualifying or limiting the estate which they take. Standing alone, it is clear that they give to the issue a fixed interest in the income from the trust estate for a certain period, and this interest, not being for their lives, nor subject to be defeated by their deaths, is a vested estate in remainder which may be transmitted by inheritance, or devise. Dohn's Exor v. Dohn, 110 Ky. 884, 62 S. W. 1033. Therefore, the decision of the chancellor was correct unless the clauses marked 3 and 5 compel a different construction. There is nothing in the will to justify the inference that the testatrix intended to dispose of the income in the same way as the corpus. On the contrary, the fact that she dealt with the income and corpus in separate clauses, and used no language suggesting that the two classes of property should pass in the same way, would seem to indicate a difference in plan and a purpose to place each on a separate and independent footing. Therefore, whatever may be the proper construction of clause 3, its application and effect are not such as to require a different view of the question. Nor does clause 5 change the situation. Even if that clause be applicable, it merely provides for a return of the bequests to the heirs of the testatrix "if there remain no heirs of the body to any one of my nephews and nieces at their death." As Eliza Norton left two heirs of her body, it is plain that the contingency on which the limitation over was to take effect has never happened. We, therefore, conclude that Ernest Norton's interest in the income passed by his will to his widow.

(2)   John Caperton, one of the beneficiaries of the income from the trust estate, died January 26, 1923, leaving his son, Hugh J. Caperton, as his only heir at law. The codicil of May 4, 1901, contains the following provision:

> "John Caperton has attended to all my business for which he has been *payed* every month. I withdraw my bequest to him in the body of this will, but give him $1,000.00 as a token of affection."

The question having been raised by appropriate pleadings the chancellor decided that the codicil did not have

the effect of revoking the interest in the income from the trust estate bequeathed in remainder to Hugh J. Caperton, and the propriety of this ruling is the first question presented by the second appeal mentioned in the caption.

Counsel for appellants take the position that the effect of the codicil was to rewrite the will in the following language:

> "The net income received from such trust is authorized from time to time to be divided equally among the following persons: J. Guthrie Coke, James Caldwell, Junius Caldwell, Ann Eliza Norton, Augusta Bright, Mary P. Johnson, and to John H. Caperton I give $1,000.00 as a token of affection. At the death of any one of these named leaving a widow and issue shall receive their share."

From this they argue that the $1,000.00 was substituted for John H. Caperton's share of the income. Therefore, no part of the income passed to Hugh Caperton, who was to receive his father's share, for the simple reason that his father had no share to which he could succeed.

One of the cases relied on is Sanford v. Sanford, 1 De G. & Sm. 67; 75 Rev. Rep. 41. In that case the testatrix, Lucy Jekyll, bequeathed to trustees £3,000 upon trust to invest it and pay to her niece, Caroline Sanford, the interest during her life, and after her death upon further trust to pay the principal sum to her children, but if there should be no children living at her death, then to Henry Sanford and Wilhelmina Putt. In a codicil, the testatrix made the following provision:

> "And whereas my dear niece Caroline Sanford has been so largely provided for, and has received so great an addition to her income, under and by virtue of the will of her late brother, Henry Sanford, I hereby deduct the sum of 2,900 pounds (which she will never want) from the said legacy or sum of 3,000 pounds bequeathed to her by my said will; and I do hereby revoke so much of the said legacy accordingly, leaving her the sum of 100 pounds only, as a remembrance of my affection and regard for her, which has suffered no abatement or diminution."

In holding that the codicil revoked the remainder, the vice chancellor said:

"The points arising in this case on the testatrix's codicil of 1842 are not without difficulty. I have considered them as well as I can, and formed an opinion upon them. I think that she must be taken to have meant, absolutely, a total revocation of the legacy of 3,000 pounds, in which a life interest had, by the will, been given to Miss Caroline Sanford, and in lieu of it to have substituted a legacy of 100 pounds, for that lady's absolute benefit. My impression therefore is, that the personal representative of Mrs. Putt has not any contingent or other interest in the 100 pounds, or in any part of the 3,000 pounds."

It will be observed that the opinion proceeds on the theory that the codicil revoked the entire legacy, and not merely the bequest to the life tenant.

Another case is, In Re Freme's Contract, 1895 L. R. 2 Ch. 778, where the testator, W. P. Freme, gave to his granddaughter, Anne Helenor Hall, an annuity of £300, payable after her death unto and amongst her children as she should by deed appoint, and in default of such appointment, amongst her children during their respective lives. He also devised to his granddaughter, Ellen Elizabeth Lloyd, a like annuity upon the same terms and conditions. Thereafter the testator added the following codicil:

"Whereas I have by my will given and devised to each of my granddaughters A. H. (Anne Helenor) Hall and E. E. (Ellen Elizabeth) Lloyd an annuity of 300 pounds per annum, and I have also by my said will given and devised to my grandson Sidney Clement an annuity of 150 pounds per annum, the said three several annuities being payable and charged in the manner and on the hereditaments in my said will particularly mentioned, now I hereby revoke the devises of the said several annuities, and instead thereof I give and devise as follows—namely, to each of my said granddaughters A. H. (Anne Helenor) Hall and E. E. (Ellen Elizabeth) Lloyd, an annuity of 150 pounds per annum to be payable and charged in the same manner and on the same hereditaments as the said several annuities of

300 pounds each were in and by my said will respectively made payable and charged; and I give and devise unto my said grandson Sidney Clement an annuity of 100 pounds per annum to be payable and charged in the same manner and on the same hereditaments as the annuity of 150 pounds per annum was in and by my said will made payable and charged.''

Lindley & Lopes, L. J. J., held that the effect of the codicil was to substitute annuities of £150 to the two granddaughters and their respective children for the annuities of £300 given by the will, while Rigby, L. J., was of the opinion that the gifts of £300 a year to the children of the two granddaughters were not affected by the codicil.

In the majority opinion stress was placed upon the fact that the codicils revoked the annuities themselves, and not merely the life interest given to the granddaughters, and upon the difficulty placed in the way of a different construction by the power of appointment, Lindley, L. J., saying:

''The power of appointment which is contained in the will creates a difficulty in the way of the contention of the appellants; but if you substitute the smaller for the larger annuities throughout there is no difficulty at all, and everything works perfectly well. If you do not, you have this curious state of things, that the annuity of £300 a year is revoked by the codicil so far as the lives of Mrs. Hall and Mrs. Lloyd are concerned, but they still, nevertheless, have the power to appoint an annuity of £300 a year, although the language under the will does not admit of their appointing larger annuities than what they themselves receive.''

Another case is Boulcott v. Boulcott, 2 Drewry 25, where the testator left a will giving property to trustees for his eight nephews and nieces, naming them, and providing that if any of the nephews should die in testator's lifetime without leaving children the share of each of them should go to the survivor or survivors. By a codicil, the testator revoked the trust in favor of Joseph, one of his nephews. The court held that the remainder over to the other nephews and nieces in the event of Joseph's death without issue in the lifetime of the testa-

tor was revoked, the vice chancellor saying: "He means, I think, nothing of this to take effect. He revokes it altogether, not merely as to Joseph's individual interest, but as to the limitations of his share, which were to take effect in certain events. I am of the opinion that the revocation is absolute as to the whole of that share, and that it goes to the heir at law and next of kin."

In Towne v. Weston, 132 Mass. 513, another case relied on, the testator's will contained the following provision:

"The residue to be invested and the income to be paid to my nephews, Edward S. Weston, Henry E. Weston, William H. Weston and Lawrence W. Jenkins, during their lives. As each nephew dies, the share in the principal from which he derived his income shall be paid over to his issue, if any, and in default of issue, to whomsoever he may by will devise and bequeath the same or order it to be paid. And in default of issue and a testamentary disposal of the same, to my heirs at law. If issue take, they take in the same manner as if the deceased had died intestate possessed of the same."

Subsequently to this will, a decision of the Supreme Judicial Court of Massachusetts as to the construction of the will of the father of the testator operated to give to the father of Lawrence W. Jenkins, one of the nephews and an only son, a large estate as administrator of his wife's estate. The testator, Nathaniel Weston, then added the following codicil to his will:

"In consequence of the decision of the court in relation to my father's will, I revoke so much of my will as relates to my nephew, Lawrence W. Jenkins, and make no provision for him."

It was held that the effect of the codicil was to exclude Lawrence W. Jenkins from any participation in the residue of the Weston estate, and that the trustees took the whole residue in trust for the other nephews. In that case, the rights of the issue of Lawrence W. Jenkins were not considered and discussed though it is claimed that all the parties, including the court, took it for granted that the codicil not only revoked the life estate given to Lawrence W. Jenkins, but the remainders to his issue.

On the other hand, though the intention of the testator is the test in determining how far the revocation of a will is affected by a codicil, as in all other cases of testamentary construction, it is the established rule not to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil. 1 Jarman, Wills, 3 Eng. Ed. 162, et seq., Quincy v. Rogers, 9 Cush. 291; Doe v. Ward, 18 Q. B. 197, 16 Jur. 709, 21 L. J. Q. B. 145. Another statement of the rule is that a codicil will not operate as a revocation of previous testamentary provisions beyond the clear import of its language. Colt v. Colt, 32 Conn. 422. and an expressed intention to change a will in one particular negatives by implication an intention to alter it in any other respect. Mason v. Smith, 49 Ala. 71; Ladd's Estate, 94 Cal. 670, 30 Pac. 99; Quincy v. Rogers, *supra;* or as said in Doe dem Hearle v. Hicks, 8 Bing. 349, "If there is only a reasonable doubt whether the clause of revocation was intended to include the particular devise, then such devise ought undoubtedly to stand."

Following these rules is the case of Ives v. Ives, 4 Jur. 265, 4 Y. & C. Exch. 34. There the testator devised and bequeathed certain real and personal estate to his daughter for life with limitations over to her children living at her death, or in default of children, to others. By codicil reciting the devise and bequest and also the limitations over, the devise and bequest were revoked "so far as relates to my said daughter." and in lieu thereof, the testator directed that his trustees and executors pay his daughter a guinea a week for and during her natural life; but "estates" both real and personal out of which the interest for the tenant for life was carved were directed to sink into the residue. It was held that the codicil did not affect the limitations over, but revoked only the interest in the tenant for life. In reaching this conclusion, the Lord Chief Baron said:

"The testator afterwards made a second and then a third codicil. Something had occurred to change his mind as to his daughter, and he allows her a guinea a week instead of the benefits under his will. He cites the bequest of the dividends and the devise to her of the Chelsea estate, but not the ultimate devise, which is merely referred to, and then he revokes this devise and bequest so far as it relates to his daughter; whereas, I am asked to revoke

them altogether. Now, on this devise, one estate does not depend on the other. It is not, properly speaking, a remainder expectant or life estate. Therefore, considering this, and that by the express terms of the will the revocation is of the daughter's interest and no further, it seems to me that it would be absurd to hold it a revocation of more than that interest. Nothing but the depending of one estate on the other would render such a construction necessary.''

As illustrating the attitude of the courts on the question of revocation, the case of Quincy v. Rogers, *supra*, is in point. There the original will contained the following provisions:

"If my cousin, Edward A. Pearson, shall survive me, he shall be paid two thousand dollars; and the like sum shall be paid to my cousin, Henry B. Pearson; and, if he shall not survive me, his issue shall take said sum.

"I give to my cousin, Mrs. Blanchard, relict of the late Rev. Mr. Blanchard, two thousand dollars, which sum shall go to her issue, in case she shall not survive me.

"All the residue of my estate, real, personal and mixed, I give and devise unto John Rogers, son of the late Daniel S. Rogers, Esq., Margaret B. Blanchard, Edward A. Pearson, Henry B. Pearson, children of the late Eliphalet Pearson, Eliza S. Quincy, Maria S. Quincy, Margaret M. Quincy (now Greene), Anna C. L. Quincy (now Waterston), and Abigail P. Quincy, daughters of said Josiah Quincy, senior, and to their heirs and assigns forever. If said John Rogers shall die in my lifetime, his issue shall take his share of said residue; but, in case any of the other residuary legatees shall not survive me, his or her share shall go to the survivors.''

A few days after the execution of the will the testator added the following codicil:

"Upon a reperusal of the preceding will, I find that my intention, in respect to the legacies thereby given to Mrs. Blanchard, and her two brothers, Messrs. Edward A. Pearson and Henry B. Pearson, is not carried into effect.

"I, therefore, in this particular, declare my will to be, that the sum of six thousand dollars shall be taken by Mrs. Blanchard and her brothers, or those of them who shall survive me, they to share alike; but if all these persons shall die in my lifetime, then the said sum shall sink into the residue of my estate.

"I declare this provision for said legacies to be in lieu of, and as a substitute for, that made in their behalf by the aforewritten will, and this writing shall be taken as a codicil thereto, hereby ratifying said will in all other particulars."

In holding that the codicil did not revoke the residuary gifts to Mrs. Blanchard and the two Pearsons, Chief Justice Shaw, who delivered the opinion of the court, said:

"Though, if the codicil stood alone, its language might seem to require one construction, yet, if the effect of such construction is to revoke a clear grant made by the will, the court will not give it that construction, unless the words of revocation by the codicil are equally clear with the language of the grant in the will."

Taking up the codicil of the will in question we find that the testatrix, after reciting that John Caperton had attended to all her business for which he had been paid every month, used this language: "I withdraw my bequest to him in the body of this will, but give him $1,000.00 as a token of affection." The testatrix did not revoke the entire legacy or thing, or attempt to withdraw from the operation of the will any of the income except in so far as it was to be enjoyed by John Caperton. If she had intended the revocation to go further, and include John Caperton's children, the natural thing would have been to mention the children in the revocation. It is true that the opposite view finds some support in the argument that Hugh Caperton was to take only his father's share, and, that share having been withdrawn, there was nothing for him to take. It must not be overlooked that the word "share" was used with respect to the income to be enjoyed by the several nieces and nephews. The will necessarily contemplated that each nephew or niece would consume his or her one-seventh of the income, and the word "share," as applied to the issue, did not mean that the issue were to take the same thing that their father and mother had enjoyed and consumed, but

were to take and enjoy the income in the same proportion. Therefore, it is not unreasonable to conclude that the testatrix merely intended that the $1,000.00 should take the place of the income in so far as it was to be enjoyed by John Caperton, and did not intend that his children should be deprived of their share of the income because of the small bequest made to their father. But whether so or not, it must be conceded that the case is one where there was a specific bequest to the issue of the nieces and nephews, and the words of revocation by the codicil are not as clear as the language of the will making the bequest. At most, the codicil merely raises a doubt and that doubt will be resolved in favor of the original bequest made by the will, and not in favor of its revocation by the codicil. It follows that the judgment of the chancellor on this phase of the case is correct.

(3) In the second paragraph of his original amended answer, counterclaim and cross-petition, Hugh J. Caperton requested the court to determine what will be the rights of the parties in interest on the final distribution of the estate. In his third paragraph he asked the court to decide who would take the income prior to the distribution of the estate if any one of the nephews and nieces should die without widow or issue. On motion of William B. Caldwell and others, cross-appellees, the court struck out the second and third paragraphs of the pleadings, and refused to decide the questions. By his cross-appeal Hugh J. Caperton challenges the correctness of this ruling, and relies on Hanna v. Prewitt, 153 Ky. 310, 155 S. W. 726. An examination of that case will show that one of the daughters claimed that she took a fee simple estate, while the other two daughters claimed that all three of them took a defeasible fee. While holding that the issue between the parties was real as well as substantial, and that the chancellor properly decided the question, the court used the following language:

"But in this state a real controversy between parties in interest as to the proper construction of a will, or a suit by parties in interest to obtain the construction of ambiguous clauses in a will, although the issues between them may not have reached the point of actual controversy, has always been regarded as a legitimate subject of equity jurisdiction, and we are not disposed to modify or depart from this satisfactory rule."

While this language is rather broad it must be construed in the light of the facts of that case, and can not be regarded as authorizing the chancellor, in the absence of any necessity therefor, to pass on future rights that may never arise. There are cases, of course, where the executor or trustee and all the devisees agree on the estates which the devisees take. In such cases, there is no actual controversy between the claimants, but there might be a present need for settling their property rights under the will, as where one of them desired to sell, mortgage or improve his share of the estate, but, where there is no actual controversy nor present need for an immediate decision, a court of equity will not pass on future contingencies. May v. May, 167 U. S. 310; Horton v. Cantwell, 15 N. E. 546; 108 N. Y. 255; Underhill on the Law of Wills, volume 1, section 456. The corpus of the estate in question is not to be distributed until the death of the last of the nephews and nieces of the testatrix, and none of the nephews and nieces sharing in the income have died without issue. At present there is no actual controversy between the parties to the action, nor has Mr. Caperton pleaded any facts showing a present necessity for deciding the questions attempted to be raised. Nor is the case strengthened by the Declaratory Judgment Act, Acts 1922, chapter 83, page 235, for section 6 of that act specifically provides that the court may refuse to exercise the power to declare rights, duties, or other legal relations ''in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or construction is not necessary or proper at the time under all the circumstances.'' In view of the contingencies that may arise, and of the absence of any showing of a necessity for an immediate decision, we are not prepared to say that the chancellor erred in refusing a decision on the ground that the construction was not then necessary, or proper under all the circumstances.

Wherefore, the judgment in the case of Caldwell Norton v. Ferda Z. Moren is affirmed, and in the case of James G. Caldwell, et al. v. Hugh J. Caperton, et al., the judgments are affirmed both on the original and cross appeals.