## Caperton et al. v. Smith's Trustee et al.

(Decided March 26, 1937.)

224

RICHARD PRIEST DIETZMAN and H. H. NETTELROTH for appellants.

BRUCE & BULLITT for Fidelity & Columbia Trust Co.

EDWARD P. HUMPHREY and MARVIN H. TAYLOR for William, James G., George D., and Junius Caldwell, and Louisville Trust Co., guardian for Nancy C. Gilmer.

LAWRENCE S. LEOPOLD for James S. Norton and Brooke N. Dugan.

FRANK J. DOUGHERTY for Nannie S. Norton.

CARROLL & McELWAIN for Kentucky Title Trust Co. and trustee of Ernest J. Norton (deceased) and Ferda Z. N. Moren.

CRAWFORD, MIDDLETON, MILNER & SEELBACH for Julia C. Jefferson and John P. Caldwell.

TRABUE, DOOLAN, HELM & HELM for Augusta Bright Davis.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

Sarah Julia Smith, a daughter of James and Eliza P. Guthrie, died testate on July 24, 1901, a resident of Jefferson county, Ky. She was predeceased by her fa-

ther, mother, and husband and no children had been born to her. Her will and codicils thereto were duly probated in the Jefferson county court. All of the personal property of testatrix, after the payment of specific legacies and her debts, was bequeathed to her nieces and to the wives of her nephews hereinafter named, and following these provisions, the will reads in part:

"After the payment of foregoing items—

"I bequeath and devise unto my Executor and trustee herein after-named in equal share my real estate of every *discription* with power to hold and manage—to make sale of the whole or any part as in his judgment may direct, and the purchaser shall receive a valid title, and shall not be *compeled* to look to the application of proceeds to invest and reinvest the same, which shall be held as other property under this clause of my will.

"The *nett* income received from such said trust is *authorized* from time to time to be divided equally between the following persons:

"J. Gutherie Coke, Sr.
"James G. Caldwell
"Ann Eliza Norton
John H. Caperton
Junius Caldwell
Augusta Bright
        and
May P. Johnston

"At the death of any one of these named leaving a widow and issue shall receive their share—

"At the death of the last of these nephews or nieces the above named said property shall be equally divided between the then surviving children of said nephews or nieces.

"This property is not to go to pay any debts of these persons named but to go to their children as my legal heirs at law."

The last codicil to the will reads:

"John Caperton has attended to all my business for will for which he has been payed every

month. I withdraw my bequest to him in the body of this will, but give him one thousand dollars—as a token of affection.

"My bequest to James G. Caldwell is for the benefit of his children free from any debts of his—

. "My bequest to Junius Caldwell is for the benefit of his children free from any debts of his."

"My bequest to Augusta Bright is for benefit of her children.

"My bequest to Mary C. Johnston is to return to my heirs at law unless she leaves living children.

"All these bequests are to return to my heirs at law if there remain no heirs of the body to any one of nephews and nieces at their death. This is a codicil to my last will."

These are the only portions of the will or codicils that we deem pertinent in a consideration of the questions presented for determination, but reference is made to the opinion in the case of Norton v. Moren, 206 Ky. 415, 267 S. W. 171, 174, where the will and all codicils are inserted in full.

Mary P. Johnston, one of the nieces mentioned in the will, who survived all other nieces and nephews, died on March 23, 1935, without issue and thereafter the Fidelity & Columbia Trust Company as trustee under the will, instituted this action under the Declaratory Judgment Law (Civil Code of Practice, sec. 639a— 1 et seq.) against J. Guthrie Coke and the other children and descendants of the nephews and nieces of the testatrix and the widows of such children or descendants as had died, asking for a declaration of the rights of the parties in the distribution of the trust estate and for advice of the chancellor concerning a proper construction of the will with respect thereto. The Kentucky Title & Trust Company, as trustee under the will of Ernest J. Norton, deceased, was also made a party defendant. Mary Coke, later Mary Caperton, and Ann Augusta Caldwell, sisters of the testatrix, were the only other children of James and Eliza P. Guthrie. The nephews, J. Guthrie Coke and John H. Caperton, named in the will were the only children of Mary Coke, later Mary Caperton, and the other nieces

and nephews named therein were the only children of Ann Eliza Caldwell. J. Guthrie Coke left as his only issue J. Guthrie Coke and Richard H. Coke; and John J. Caperton left as his only issue Hugh J. Caperton. Caldwell Norton and Ernest Norton were the only children of Ann Eliza Norton; the former died leaving as his only issue James S. Norton, and Brooke Norton Dugan, and a widow, Nannie Norton, who was also made a party defendant. Ernest Norton died on March 1, 1922, without issue and was survived by a widow, Ferda Z. N. Norton, now Ferda Z. N. Moren, who was made a party defendant. James G. Caldwell left as his only issue William B. Caldwell, James G. Caldwell, George Caldwell, Junius Caldwell, and Nancy C. Gilmer. The latter died leaving as her only issue a daughter, Nancy C. Gilmer. Augusta C. Bright left as her only issue Augusta B. Davis, and Junius Caldwell left as his only issue Julia C. Jefferson and John P. Caldwell. The surviving great nieces and nephews of testatrix and the children of her great nieces and nephews who had died and all of whom were made parties defendant filed answers setting up their respective claims to the trust estate as did the other defendants mentioned.

On final hearing, it was adjudged in substance that upon the termination of the trust estate created by the will upon the death of Mary P. Johnston on March 23, 1935, the corpus of the trust estate passed to and became vested in the proportions of an undivided one-twelfth each in the then surviving great nieces and great nephews of the testatrix and an undivided one-twelfth jointly in the descendants of each of the great nieces and great nephews of testatrix who had died prior to the termination of the trust estate, the descendants of each deceased great niece or great nephew taking only the share the deceased parent would have taken if living at the termination of the trust estate; that J. Guthrie Coke, Richard H. Coke, Hugh J. Caperton, William B. Caldwell, James G. Caldwell, George D. Caldwell, Junius Caldwell, Nancy C. Gilmer, daughter of Nancy C. Gilmer, deceased, Augusta Davis, Julia C. Jefferson, and John P. Caldwell were entitled to the immediate possession of a one-twelfth interest in the corpus of the trust estate and the income thereon; that James S. Norton and Brooke Norton Dugan, children of Caldwell Norton, deceased, were entitled to a one-

twelfth undivided interest jointly, **or a one-twenty-fourth** interest each therein.

Hugh H. Caperton and the Fidelity & Columbia Trust Company, as trustees under the will of J. Guth"erie Coke, and Richard H. Coke have appealed. On the record filed in that appeal the other appeals and also cross-appeals have been prosecuted. Since all the appeals have been considered together on the same record and all call in question the construction placed upon the will by the chancellor, they may be disposed of in one opinion.

The real question to be determined is whether at the termination of the trust estate distribution to the devisees should be made per stirpes or should be made per capita. Naturally, those favored by a per stirpes distribution are contending for that method of distribution and those not so favored are contending for the other method. Every phase of the case has been well presented in briefs by eminent counsel for respective parties, and while the conflict is sharp concerning the proper construction to be given the will, we find them all in agreement that no rule is more firmly imbedded in our law than the one requiring courts in construing wills to first determine the intention of the testator, as gathered from the will as a whole, and then to adopt and apply that construction which accords with and carries out such intention. See Phelps v. Stoners' Adm'r et al., 184 Ky. 466, 212 S. W. 423, and cases therein cited. They likewise recognize the prevailing rule that where the language adopted by the testator is clear, direct, and unambiguous, in expressing his intention, the will becomes its own expositor and aiding rules of construction are unnecessary.

In providing for final distribution of her estate, the intention of testatrix could not have been more tersely or clearly stated. Testatrix unequivocally expressed an intention to divide her real estate equally amongst the "then surviving children" of her nieces and nephews without regard to class or stock. "At the death of the last of these nephews or nieces, the above named said property shall be equally divided between the then surviving children of said nephews and nieces." Standing alone, this provision beyond all doubt directs per capita distribution amongst the great

nieces and nephews. None of the parties contend or could consistently contend otherwise.

It is most vigorously argued, however, that when this provision is considered in connection with other parts of the will, it takes on a different color; and that when considered as a whole, the will manifests a different intention on the part of the testatrix. Counsel for some of the parties show disposition to link the provision creating the trust estate and directing the distribution of the income arising therefrom with the quoted excerpt making disposition of the corpus of the estate at the termination of the trust estate, arguing, in effect, that by the terms of the provision creating the trust estate, the testatrix meant to divide her estate into seven shares for the benefit of each of her nieces and nephews from which they would receive the income for life and at their death the one-seventh share from which they received the income would pass to their children, if any; and that this intention is further evidenced by the last codicil to the will as above quoted.

In Norton v. Moren, supra, this court only dealt with the right of the parties respecting a proper distribution of the income from the trust estate; and while the answer in this case did request that the court determine what would be the rights of the parties in interest on final distribution · of the estate, that request was refused on the ground that the court was not called upon to pass on rights that might never arise, however, in the course of the opinion, it was said:

> "There is nothing in the will to justify the inference that the testatrix intended to dispose of the income in the same way as the corpus. On the contrary, the fact that she dealt with the income and corpus in separate clauses, and used no language suggesting that the two classes of property should pass in the same way, would seem to indicate a difference in plan and purpose to place each on a separate and independent footing."

By the first provision, testatrix was only making provision for equal distribution of the income from the trust estate during the life of her nieces and nephews and by the latter provision she was disposing of the corpus of her estate, the two provisions being separate, distinct, and independent. The former in no

way directly or inferentially disclosed a purpose other than that so clearly expressed in the latter. However, it must be admitted that the meaning of the quoted codicil is obscure and its language somewhat confusing. Testatrix had not made or intended to make to any of the parties named in the codicil a bequest other than of her personal property and the income from her real estate. Her withdrawal of the bequest to John Caperton as indicated in Norton v. Moren, supra, manifestly referred to income from the trust estate. The reference therein to the bequests to James G. Caldwell, Junius Caldwell, and Augusta Bright would, standing alone, be construed as referring to the income from the real estate since none of the real estate itself had been devised to any of these parties. The confusion in the codicil arises out of the reference to the bequest to Mary P. Johnston, but since Mary P. Johnston had not been bequeathed anything more than her brothers and sisters, it is apparent that the testatrix had in mind the income from the real estate when she provided that the bequest to Mary P. Johnston would return to the heirs of testatrix unless Mary P. Johnston left children living.

With reference to the income from the trust estate, it was provided that at the death of any of the nieces and nephews, leaving a widow and issue the widow and issue should receive the share of the income of the deceased niece or nephew; but there was no provision as to what should become of the share of any nieces or nephews in the income should they die without issue before the termination of the trust estate. By a long line of cases, it has been consistently held by this court that where a will provides for "equal distribution," or distributon "share and share alike," among designated beneficiaries, the distribution should be per capita and not per stirpes unless a contrary intention is discoverable from the will. Prather v. Watson's Ex'r, 187 Ky. 709, 220 S. W. 532; Rogers v. Burress, 199 Ky. 766, 251 S. W. 980; Fischer v. Lange, 190 Ky. 699, 228 S. W. 684; Purnell v. Culbertson, 75 Ky. (12 Bush) 369; Day's Adm'r v. Bright, 257 Ky. 359, 78 S. W. (2d) 43. Testatrix clearly and emphatically expressed an intention to divide her real estate equally among designated beneficiaries and we find nothing in the quoted codicil or other parts of the will from which a contrary intention is discoverable. It requires more than doubt-

ful inferences and implications to overthrow such clearly expressed intention. It is our conclusion that at the death of the last of the nieces and nephews of testatrix, the real estate passed and vested in equal shares in the great nieces and great nephews, with the surviving issue of any great nieces or nephews who had died prior to the termination of the trust estate taking the share the parent would have taken if then living. Hodge v. Lovell's Trustee et al., 262 Ky. 509, 90 S. W. (2d) 683; Tucker v. Tucker, 259 Ky. 361, 82 S. W. (2d) 458.

Caldwell Norton died prior to the termination of the trust estate and under his will provided for an equal distribution of his estate between his wife and two children. Ernest Norton died without issue prior to the termination of the trust estate and by his will left all of his property to his widow, Ferda Z. N. Norton, now Moren, and it is now contended by counsel for Mrs. Nannie Norton that under the will of her husband, she was entitled to a one-third interest in the share which her husband would have received had he survived the last of the nieces and nephews of testatrix; and counsel for Mrs. Moren maintain that under the will of Ernest Norton she is entitled to the share he would have taken if he had been living at the termination of the trust estate.

In Keeton v. Tipton, 184 Ky. 704, 212 S. W. 909, the testator had devised his estate to a trustee with directions to pay the income to two brothers for life and upon the death of the survivor, convert the estate into cash and distribute it to the then living descendants of one of them. It was held that the will created a contingent remainder. It is therefore apparent that the interest of the remaindermen in the estate of testatrix did not vest until the death of Mrs. Mary P. Johnston, the last of the nephews and nieces of testatrix. The interest of Caldwell Norton and Ernest J. Norton was contingent on their surviving the last of the nieces and nephews.

In Lindenberger v. Cornell, 190, Ky. 844, 229 S. W. 54, 59, it was held that "under section 2341, Ky. Stats., a contingent remainder of any kind is the subject of a sale and conveyance, but the purchaser will receive nothing unless the contingent remainderman survives until the event occurs upon which his estate vests."

232

The same rule applies to a devise of a contingent remainder. See Bank of Taylorsville v. Vandyke, 159 Ky. 201, 166 S. W. 1024; Nunnelly's Guardian v. Nunnelly, 180 Ky. 131, 201 S. W. 976 and cases cited in those opinions.

It follows therefore that the judgment of the chancellor in fixing the respective interest of the parties and directing distribution of the estate accordingly was correct.

Judgment affirmed.

Whole Court sitting.