# Ward et al. v. Curry's Ex'r et al.

May 5, 1944.

Errol W. Draffen and W. H. Phillips for appellants.

C. E. Rankin for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

On February 7, 1936, the late Mrs. Zeletta G. Curry, an elderly widow of Harrodsburg, executed her will, prepared by a lawyer, clear and specific. Four days later she wrote a holographic codicil. She died May 26, 1943, leaving personal property, appraised at about $66,000, and real estate worth about $6,500. The codicil creates confusion.

The first three items in the will direct the payment of debts and funeral expenses, the erection of a monument and a bequest for the care of a cemetery lot in Cincinnati.

The fourth and fifth provisions of the will are as follows:

"Item IV. To my dear friend, Clara E. Chappelle, who has been more than a daughter to me, I give and devise the house and lot where I now reside in Harrodsburg, Kentucky, known as 'Diamond Point' for and during her natural life. At her death, said house and lot shall pass to and become the property of the United Presbyterian Church of Harrodsburg, Kentucky, absolutely. I also give and bequeath the said Clara E. Chappelle for and during her natural life, all the household

and kitchen furniture, fixtures, furnishings and decorations now in said home and used in connection with the occupancy of same as a home. On the death of the said Clara E. Chappelle said household and kitchen furniture, fixtures, furnishings and decorations shall pass to and become the property absolutely of the nieces of my husband, George Alfred Curry, who may be living at the time of the termination of this life estate, to be divided among them share and share alike.

"To the said Clara E. Chappelle, I also give the sum of Fifteen Thousand ($15,000.00) Dollars for and during her natural life of which sum Five Thousand ($5,000.00) Dollars shall be given her in Treasury Bonds and Ten Thousand ($10,000.00) Dollars in Great American Insurance Stock, she to use the income therefrom in such manner as she may desire. She shall have full power to sell any of said bonds or stock and from the proceeds of such sale expend for her personal use all or any portion of same as she may deem necessary and proper and she shall not be required to account for such portion as she may spend. At her death said sum of Fifteen Thousand ($15,000.00) Dollars or so much thereof as shall remain unexpended shall pass to and become the property, absolutely, of the nieces and nephews of my late husband, George Alfred Curry, who may be living at the date of the death of the said Clara E. Chappelle.

"I also give to the said Clara E. Chappelle, absolutely my automobile.

"Item V. All the rest and residue of my estate real, mixed and personal wheresoever situated of which I may die seized or possessed, I direct to be divided by my Executor into eight (8) equal portions. Two of these portions I give, devise and bequeath to William T. Curry, my husband's brother, for and during his natural life, and at his death, to his children, absolutely, share and share alike; two of these portions, I give, devise and bequeath to Robert P. Curry, my husband's brother, for and during his natural life, and at his death to his children, absolutely, share and share alike; four (4) of these portions, I give, devise and bequeath, absolutely, to the children of Mollie C. Dedman, who was my husband's sister, share and share alike."

Other than the addition of a trust fund of $300 for

the care of two lots in the Harrodsburg cemetery, identified as those of her husband and his brother, the codicil is as follows:

"I hereby cancel and revoke Item IV and further direct that it read as follows:

"Item IV. To my dear friend, Clara E. Chappelle, who has been more than a daughter to me I give and devise the house and lot where I now reside in Harrodsburg, Ky., known as 'Diamond Point' for and during her natural life. At her death, said house and lot shall pass to and become the property of the United Presbyterian Church of Harrodsburg, Ky. Said house and lot to be sold when suitable conditions exist and the proceeds to be re-invested and the income from same be given each year to National Missions of Presbyterian Church to be known as 'The Alfred and Zeletta Curry, Memorial.'

"I also give and bequeath the said Clara E. Chappelle for and during her natural life, all the household and kitchen furniture, fixtures, furnishings and decorations now in said house and used in connection with the occupancy of same as a home. She to have my personal property such as clothing, jewelry, etc.

"In Item V, second line, I hereby cancel and revoke the word 'personal estate.'"

The change made in the disposition of the real estate by the substituted Item IV is that instead of an absolute devise the remainder estate in her home given to her church was directed to be converted into cash and a trust established. The furnishings of the home were again given Clara E. Chappelle for life, but the bequest of the remainder in this property to the nieces of her husband and of the automobile to Miss Chappelle were omitted and no specific disposition made of it. In place of the part omitted there was added: "She (Clara E. Chappelle) to have my personal property, such as clothing, jewelry, etc." The bequest of $15,000 to Miss Chappelle for life and the balance in remainder to the nieces and nephews of testatrix's husband was left out.

The only change made in the residuary provision of the original will is to "cancel and revoke the words 'personal estate' in the second line." The two words do not appear together in the will.

The circuit court rendered an exhaustive opinion and upon it adjudged that the testatrix did not die intestate as to any of her property; and

"The codicil revoked the whole of Item IV of the original will and substituted therefor Item IV as set out in the codicil. None of the property passed under Item IV of the original will, but that portion of the property described in the original Item IV, which is also described in Item IV as set out in the codicil, did pass under the codicil. All of the property described in Item IV of the original will, and not described in Item IV as set out in the codicil, became a part of the residuary estate and passed, through Item V of the original will, to the brother and nieces and nephews of George Alfred Curry, as therein provided.

"The codicil revoked no part of Item V of the original will, except to the extent of the intimate personal effects, like clothing and jewelry, which belonged to the testatrix. These passed to Clara E. Chappelle under the codicil leaving all the remainder of her personal property to pass as part of the residuary estate through Item V, to the brother and nieces and nephews of George Alfred Curry. No part thereof passed to the heirs at law of the testatrix."

Mrs. Curry's heirs-at-law appeal from the judgment. The executor, Miss Chappelle, and the nieces and nephews of the husband of the testatrix have been granted a cross appeal. It appears, however, that the cross appeal is merely protective and has been taken as a guard against some unforeseen construction of the will which might be adjudged adverse to the appellees, for they ask that the judgment be affirmed.

The testatrix bears testimony in her will to her devotion to Miss Chappelle, and her sense of obligation to her husband's people is revealed in the sixth item, saying that the distribution of her estate was being made "with due regard to the fact that a portion of same was given me by my husband and a portion has always been my own individual property." Mrs. Curry never had any children and was the only child of her parents. Her kinsmen were cousins in different degrees, children and grandchildren of brothers and sisters of her parents. It appears that she was not on intimate terms with any of them and that some of them were not located for the suit but were proceeded against as un-

known heirs. Her relations with her husband's people, however, were intimate and cordial. In construing a will there is always present the presumption against partial intestacy. Of course, it is destroyed if a contrary intention appears in the will. The circumstances surrounding this testatrix and her own explanations make that presumption very strong indeed. Coupled with this is the existence of a residuary clause in her will. In such a case the courts should strive perhaps more diligently to work out a construction to accord with the presumption than where there is a different state of fact.

There is much force in the reasoning of the appellees that in looking over her will Mrs. Curry realized that her clothing and intimate personal effects would, quite inappropriately, be sold or divided among her husband's elderly brothers and the children of his deceased sisters, so she changed her will to provide that her close friend and companion should have them. In order to make this certain she struck out the word ''personal'' in the residuary clause; and in doing that she inadvertently omitted the bequest of $15,000 to Miss Chappelle. She may have believed that the part not changed would stand as written, for under the circumstances it does not seem reasonable that she would have again given her home and contents to her companion for life and then intentionally deprived her of the source of income to maintain it and herself, having made such provision only four days before without any change in their relationship occurring, as is manifested by the additional bequest to her of her personal effects. The earnest, conscientious desire to arrive at the intention of the testatrix is embarrassed by the belief that the lady did not realize the extent of her modification or intend to do all that she did, as measured by the fundamental law of will construction. Nevertheless, as has been often repeated, the courts must construe the will by what was written and not what they may believe was intended to be written. She wrote that Item IV of the original will was cancelled and revoked by that part of her codicil, also designated as Item IV. It is silent as to the $15,000 bequest. While the appellees suggest and make claim that the judgment denying Miss Chappelle this bequest is erroneous, the point is not pressed.

It is conceded that under the rule of ejusdem generis

no personal property other than clothing, jewelry and similar personal effects passed to Miss Chappelle under Item IV of the codicil. Bond v. Martin's Adm'rs, 76 S. W. 326, 25 Ky. Law. Rep. 719; Annotations, 80 A. L. R. 948; 69 C. J. 400.

A codicil, unlike a later will, is not prima facie a revocation of an earlier will but rather a republication or confirmation with alterations, except as it contains inconsistent and irreconcilable provisions. Lightfoot v. Beard, 230 Ky. 488, 20 S. W. (2d) 90; Breckinridge v. Breckinridge's Ex'rs, 264 Ky. 82, 94 S. W. (2d) 283; Page on Wills, Sec. 466. Of course, if it is clear that the testatrix intended the codicil to be a revocation or substitution in whole or in part, it will be so regarded and construed. Norton v. Moren, 206 Ky. 415, 267 S. W. 171; Breckinridge v. Breckinridge's Ex'rs, supra. In the present will the testatrix clearly and expressly made the codicil substitutional of Item IV of her original will. There is no doubt that no part of the residuary estate passed under Item IV. The only consideration to be given the original Item IV is in our quest for the desire of the testatrix as to how her residuary estate should go under the modified will as an entire instrument. McGinnis v. Moore, 278 Ky. 587, 129 S. W. (2d) 141.

But that is not true as to Item V. She revoked and cancelled out of the original, as she said, only "the words 'personal estate.'" That must be deemed a republication of the original Item V, except as it may be found irreconcilable with all other parts of the will as modified by Item IV of the codicil. "A revocation of a distinct portion of the will shows that testator does not intend to revoke the remaining provisions of the will." Page on Wills, Sec. 466; Norton v. Moren, 206 Ky. 415, 267 S. W. 171. It is manifest that the testatrix did not intend to strike out the word "estate" completely, for that would have left the original Item V meaningless. It would read: "All the rest of my real, mixed and personal wheresover situated," etc. "A residuary will be construed so as to avoid partial intestacy unless a contrary intent is apparent." Shaver v. Weddington, 247 Ky. 248, 56 S. W. (2d) 980, 984. There is another applicable rule which logic and experience have developed, namely, a gift once made is not to be cut down by a subsequent codicil unless the intention to that effect clearly appears. Fidelity & Columbia Trust Co. v. Vivian, 294

Ky. 390, 171 S. W. (2d) 987. To say that the testatrix intended to eliminate the disposition of all her personal estate of every character would be to say that she was careful to devise explicitly only the remainder interest in her real estate to her church, which constituted one-tenth as much as the rest of her estate, and have scattered out ten times as much among unnamed cousins, many of whom were probably unknown to her, and none of whom she had thought enough of to mention anywhere in her will. Fortifying the belief she did not intend to do this is her retention of the paragraph reciting that she had disposed of her estate "with due regard to the fact that a portion of same was given me by my husband." It appears most of the estate came from him. How can the deduction of her negative purpose be given affirmative effect? If it can be done it ought to be done; otherwise the court would have to say that there was a revocation of all the residuary provisions of the original will, and that the testatrix died intestate as to all of her estate other than her home and intimate personal effects. The chancellor concluded that the words "personal estate," which the codicil struck from the residuary devise, did not mean personal property in general but only what testatrix had taken from the general residuum and given to Miss Chappelle by Item IV, and that she merely undertook to say how Item V. would be without it. He found authority in this language, in Corn v. Roach, 225 Ky. 725, 9 S. W. (2d) 1074:

"A court, in construing a will, is not confined to a mere definition of particular words employed, but is required to take a comprehensive survey of the entire will. The apparent objects operating to influence the testator's mind should be considered and the words used in the will given that reasonable construction best calculated to carry out the wishes of the testator as reflected by his will."

It was under such conception and reasoning that the court, in Pohlman v. Pohlman, 150 Ky. 679, 150 S. W. 829, construed the phrase "all money" to embrace securities; and in Mutual Life Ins. Co. v. Spohn, 172 Ky. 90, 188 S. W. 1078, it is recited that it has been construed to include testator's entire personal estate. Cf. Ford's Adm'r v. Wade's Adm'r, 242 Ky. 18, 45 S. W. (2d) 818, 80 A. L. R. 936. We have here not a question

of expansion but of restriction in the application. The general rule is that if it appears from the surrounding circumstances that the term was used in a restricted sense, such as to include only personal effects or tangibles, it will be so construed. 48 C. J. 1046.

We adopt the following portion of Judge Alcorn's opinion: "In the original will Mrs. Curry had given to Miss Chappelle certain property,—her residence, household furniture, fixtures, furnishings and decorations 'now in said house and used in connection with the occupancy of same as a home.' In the codicil, after repeating this gift, and in identically the same language, so far as concerns the household furniture, fixtures, furnishings and decorations, she made an additional gift, in these words: 'She to have my personal property, such as clothing, jewelry, etc.'

"It is only when she came to make the gift of the clothing, jewelry, etc., that she made use of the words 'personal property.' Contrast that with the manner in which she described the rest of the bequest to Miss Chappelle, when speaking of the furniture, etc. 'now in said house, etc.' One group of things the subject of this bequest she evidently considered as belonging to the home, while the other group she regarded as belonging to her person. And those things in the second group she refers to as 'personal property.' It is, therefore, clear that at this point in her codicil she wrote 'personal property' as meaning what she wore and what she used in connection with her person. Now it is just immediately following this use of the words 'personal property' that she wrote: 'In Item V, second line, I hereby cancel and revoke the words 'personal estate.' As it has already been observed, the expression *personal estate* does not occur in Item V at all. But in it, and on the second line, is the word *personal*, in the phrase, 'All the rest and residue of my estate real, mixed and personal.' The will, it should be kept in mind, was written by an attorney, while the codicil was written by Mrs. Curry. Mrs. Curry had not mentioned in any of her bequests in the original will her clothing or her jewelry or any of her intimate personal belongings. But she had just made disposition of them in this codicil. She looked upon them as constituting her 'personal property.' Having that idea of the significance of *personal* property, and realizing that in the will as originally written it un-

dertook to dispose of her estate, 'real, mixed, and personal,' it is but logical and reasonable that she should in the codicil, after she made this bequest of her clothing, jewelry, etc., revoke the gift of her personal property which she had made in the residuary clause of the original will. That she wrote 'personal estate' and not 'personal property' in the revocatory clause, is immaterial, because the really significant feature is the meaning she evidently attributed to the word *personal* when used with reference to property. It is a fair inference, I may add, that she employed the word 'estate' instead of 'property' because of the phraseology of Item V in this regard—"my *estate, real, mixed, and personal.*'" (Emphasis supplied.)

We may add the thought that "personal estate" or "personal property" is an ambiguous term which may be used to designate every species of property not coming under the denomination of real estate, or, according to the context of the instrument, that term may be used to designate a particular class of such species. 50 C. J. 760; 69 C. J. 391; Annotations, 137 A. L. R. 212. We have no doubt that in using the word "personal" in her codicil the testatrix used it in the common and everyday sense or understanding that it pertains to or is intimately associated with one's person as an individual, and that she did not use it in the legal sense of being all property other than real estate as was used in the original will by her lawyer. Cf. Caudle v. Eckles, 282 Ky. 295, 138 S. W. (2d) 468.

The conclusion indicates that the judgment is correct and is supported by three specific decisions.

In Southington Bank & Trust Co. v. American Baptist Home Mission Soc., 96 Conn. 107, 113 A. 166, a well prepared will devised the residuary estate to two missionary societies. A few months later the testatrix personally wrote a short codicil, saying that she did not intend that her jewelry, furniture and "personal estate" should be included in the "rest of my estate" given to the societies, but she did desire "that they be given to my nieces and divided between them as they see fit." She died possessed of cash and securities worth $28,000, and real estate worth $5,000. The furniture and jewelry together were worth less than $500. The court considered that the circumstances surrounding the testatrix, which were principally her great interest in missions of

her church which had continued to her death, would naturally disprove a purpose to deprive the missionary societies of the substantial bequests given in the original will, and that the informal character of the codicil raised a doubt that testatrix entertained so radical a purpose as to change the destination of such a large part of her estate as disclosed by the literal language of the last sentence in the codicil. The court thought that it was improbable that she would make such a radical change in her will in so informal manner but not improbable that she would change the disposition of her household goods, jewelry and clothing in that way. So it was held that the "personal estate" mentioned in the codicil was restricted to such personal effects.

In re Combs' Estate, 136 Cal. App. 286, 28 P. (2d) 711, the term "personal property," used without any limiting context in a holographic will, was construed to include only "personal effects," because, if given its broad, general meaning and as defined by statute, provisions for other children would have to abate. Cf. KRS 446.010.

In re Duraind's Estate, 51 Cal. App. (2d) 206, 124 P. (2d) 330, 331, a testatrix, on September 6, 1939, executed a formal will leaving to a religious corporation "all of my property, whether real, personal or mixed." On October 27, 1939, she wrote a codicil in her own hand and directed that two named cousins "take charge of my personal property and distribute it according to my instructions." The next day she showed that paper to her attorney and he wrote another codicil bequeathing her "household furniture, bric-a-brac and personal effects" to the two cousins and a third one, adding, "In all other respects my said will is affirmed." She directed one of the cousins to make "a proper division of this personal property." The court believed the two papers read together showed clearly that the meaning of the decedent when she used the words "personal property" embraced furnishings and personal effects only, which conclusion was fortified by the character of her estate and the fact that in a gift to the church such articles were not appropriate. In a third codicil, written August 24, 1940, the testatrix referred to her real estate, part of which had already been conveyed to the church, and added, "but my personal property I wish to leave to my" three cousins already named and a

fourth one, who should "give what they do not want to the Sisters of the Holy Family." About 75% of the entire estate was composed of cash and securities, some $18,000, and the court did not believe that the language in the codicils referred to that property but referred only to furniture and personal effects. Said the court: "If the decedent intended to make any such change it is manifest that she would have used clear words evidencing the same."

The reasoning and decisions in each of the three cases are very pertinent here.

The appellants have debated the questions or rather disputed the arguments for the construction of the will as adjudged, but without specific authority. In a large measure they rely upon KRS 394.500 (formerly Sec. 4843, Ky. Stats.) declaring that:

"Unless a contrary intention appears from the will, real or personal estate, comprised in a devise incapable of taking effect, shall not be included in the residuary devise contained in the will, but shall pass as in case of intestacy."

We do not think the statute applicable. Once the conclusion is reached that the change made by the codicil in the residuary provisions of the will (Item V.) affected only the disposition of the "clothing, jewelry, etc.," of the testatrix, the balance of the estate is disposed of by the residuary clause and there is no lapsed devise or devise not capable of taking effect. In Russell v. Tyler, 224 Ky. 511, 6 S. W. (2d) 707, two paragraphs of a will had been revoked by destruction or removal and no substitution or other disposition was made of the property covered by that part of the will. In Northcutt's Ex'x v. Farmers Nat. Bank, 292 Ky. 628, 166 S. W. (2d) 971, 144 A. L. R. 472, two specific devises lapsed because of the death of the devisees, and, as we could find no contrary intention disclosed in the will, we held both passed under the terms of the statute as intestate property. The cases are clearly distinguishable from the one at bar.

We are of opinion that the construction of the will as adjudged is the proper one.

Wherefore the judgment is affirmed.